## WATTS, WATTS & COMPANY, LIMITED, *v.* UNIONE AUSTRIACA DI NAVIGAZIONE &c.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 25.  Argued April 17, 1918.—Decided November 4, 1918.

Upon review of an admiralty case, the court has jurisdiction to make such disposition of it as justice may require at the time of decision, and therein must consider changes in fact and in law which have supervened since the decree below was entered.  P. 21.

In a libel *in personam*, brought by a British against an Austro-Hungarian corporation, while their countries were at war and the United States was a neutral, to recover for coal furnished before the war by the libelant to the respondent in Algiers, jurisdiction was obtained by attachment of a ship (for which a bond was substituted); but, after answer and submission of the cause upon agreed facts and proof of foreign law, the District Court declined to proceed, because of prohibitions placed by the belligerent countries on payment of debts to each other's subjects, and dismissed the libel without prejudice.  This country having entered the war after the case came to this court—

*Held:* (1) That the libelant as a co-belligerent had a right to maintain the suit against the respondent, an alien enemy, and that jurisdiction should not be declined as an act of discretion.  P. 21.

(2) That respondent, though an alien enemy, was entitled to defend, and that, in view of the non-intercourse laws and the actual impossibility of free intercourse between residents of this country and of Austria-Hungary, further prosecution should be suspended until through restoration of peace, or otherwise, adequate presentation of respondent's defense should become possible.  P. 22.

229 Fed. Rep. 136, reversed.

THE case is stated in the opinion.

*Mr. John M. Woolsey,* with whom *Mr. J. Parker Kirlin* and *Mr. Cletus Keating* were on the brief, for petitioner: The drafts did not constitute a novation or waiver.

*The Emily Souder*, 17 Wall. 666. The obligation sued on is in essence for goods sold and delivered—an obligation justiciable in any civilized country, *Cuba R. R. Co.* v. *Crosby*, 222 U. S. 473, 478, and one peculiarly within the jurisdiction of every maritime tribunal which could obtain jurisdiction over the defendant by attachment or otherwise. If the debt had been assigned to a subject of any power not at war with England, no question could have been raised against enforcement here. *The Anna Catharina*, 4 C. Rob. 107, 112–113.

The respondent, conceding the obligation to pay, appeared generally and expressly admitted the jurisdiction of the court. The objection raised, on the trial, *viz*, that as a subject of Austria, and because of an alleged Austrian moratorium, it should not be compelled to pay to a British subject, should have been pleaded. It was personal to the respondent, not going to the subject-matter of the suit, and the court, *sua sponte*, could not have made it. Under well-settled principles, any objection to the court's taking jurisdiction over respondent's person was waived. But the courts below have erroneously allowed the respondent to come in and go out at will. *Cf. Porto Rico* v. *Ramos*, 232 U. S. 627, 632. They should have adjudicated the case in regular course.

Our admiralty courts take jurisdiction, in proceedings between foreigners either *in rem* or *in personam*, notwithstanding the contract in suit was made and to be performed, or the tort complained of was committed, in a foreign country or on the high seas. The only requisite is jurisdiction of person or property. *The Maggie Hammond*, 9 Wall. 435; *The Titanic*, 233 U. S. 718; *The Jerusalem*, 2 Gall. 191; *Thomassen* v. *Whitwell*, 9 Ben. 113; *Bernhard* v. *Greene*, 3 Sawyer, 230; *Mason* v. *Blaireau*, 2 Cranch, 240; *Cooper* v. *Newman*, 14 Wall. 152; *The Napoleon*, Olc. 208; *Davis* v. *Leslie*, Abb. Adm. 123; *Bucker* v. *Klorkgeter*, Abb. Adm. 402; *Fairgrieve* v. *Marine Ins. Co.*, 94 Fed.

Rep. 686; *The Attualita*, 238 Fed. Rep. 909. Although in some suits between foreigners our admiralty courts may have discretion to decline jursidiction, this is not such a case. The discretion referred to is not absolute but has been strictly defined by this court. *The Maggie Hammond*, 9 Wall. 435, 456, 457; *The Belgenland*, 114 U. S. 355.

This suit is plainly outside the exceptions enumerated in *The Belgenland, supra*, and within the rule laid down in that opinion, at pp. 368, 369. The controversy is *communis juris*, the parties do not belong to the same foreign nation, and, further, most of the coal was bought and used in carrying on trade between Trieste and New York, which gave the United States an interest in the transaction as directly supporting its commerce. See *The Belgenland*, p. 366; and *The Jerusalem*, 2 Gall. 191.

The District Court's decision in effect gives extraterritorial force to the Austrian war law to bar the claim of a British subject who had secured jurisdiction according to our practice. Strict neutrality required that we disregard the war measures of all belligerents and apply our laws, since neither party had any claim to have his own applied. If, as declared by our Government, commerce in munitions of war with the enemies of Germany was not unneutral (*cf. Northern Pacific Ry. Co.* v. *American Trading Co.*, 195 U. S. 439), how can it be said that the enforcement of admitted simple contract obligations, having nothing to do with war, infringes neutrality?

The failure of the courts to adjudicate this case is not comity, but a breach of comity. The defense is in reality a plea of alien enemy, which so long ago as 1799 was said by Lord Kenyon in *Casseres* v. *Bell*, 8 Term Reports, 166, to be "an odious plea." Raised in the courts of a neutral nation, such a plea was absurd and should have been as unsuccessful a it is odious.

Notwithstanding that when the case was tried we knew

no alien enemies, this court is called upon by this defense to discriminate in favor of the Austrian Government against Englishmen. Since the obligation itself is not affected by the prohibition, it seems clear enough that the prohibition at most goes only to the party who shall sue. An alien enemy has no right to sue in the courts of a king with whom his own sovereign is at war, because a personal disability of suing under such circumstances attaches to an alien. *Daimler Co.* v. *Continental Tyre & Rubber Co.*, [1916] 2 A. C. 307, 316. There is not any such disability in an alien friend.

It is elementary, however, that the matter of parties is to be governed by the law of the forum, and a question of personal jurisdiction of a defendant may be waived.

A civil moratorium will be recognized in a foreign court as the law at the place of payment, provided it is not inconsistent with the public policy of the forum, and is otherwise enforceable. *Rouquette* v. *Overman*, L. R., 10 Q. B. 525. But there was no local moratorium prohibiting payment in England, where payment in this case should have been made, nor in Algiers where it might have been made.

No rule of law which has hitherto been recognized can be invoked to call for the enforcement in this country of the Austrian prohibition as a moratorium. It was not intended to relieve Austrian subjects from the immediate pressure of debts, as is the case of ordinary moratorium decrees, nor intended to benefit them at all. It was promulgated for the avowed purpose of injuring British merchants' commerce and property in connection with war, and is highly penal.

It is immaterial that Great Britain enacted similar but less stringent prohibitions. *Robinson & Co.* v. *Continental Ins. Co. of Mannheim*, [1915] 1 K. B. 155. The courts of one country will not enforce or recognize the penal laws of another.

The Austrian proclamation has no extraterritorial operation. Comity in its true sense is limited to enforcing substantive rights, Wharton, Confl. of Laws, 3d ed., § 428A, vol. 2, pp. 938–939; Rorer, Interstate Law, p. 7; accruing under some foreign law which is analogous to the law existing in the State where the litigation arises. Effect cannot be given to the defense unless this Austrian war measure is enforced as a part of our municipal law. To do this would be the very denial of comity. The reasons stated by the District Judge have been strongly disapproved in *Compagnie Universelle de Telegraphie* v. *United States Service Corporation,* 84 N. J. Eq. 604; *s. c.,* 85 *id.* 601.

Confiscation of the debt in Austria, even if such proceedings had been taken, could not have any extraterritorial effect. *Baglin* v. *Cusenier Co.,* 221 U. S. 580; Hall, International Law, 4th ed., p. 459.

If as the respondent argues the effect of the giving of the drafts was to transfer the place of payment from Algiers to London, which the libelant denies, it does not avail as a defense. Under the law of England, as set forth in the King's Proclamation, known as "Trading with the Enemy Proclamation No. 2," issued on September 9, 1914, express permission was given to one in the position of the libelant to receive payment from an enemy, without being guilty of a prohibited transaction. *Oronstein & Koppel* v. *Egyptian Phosphate Co.,* [1914] 2 Scotch L. T. 293; Trotter's Law of Contract During War, 428; *Ingle* v. *Mannheim Ins. Co.,* 31 T. L. R. 41, [1915] 1 K. B. 227. Further, under British law, if jurisdiction could have been obtained over the defendant, the libelant could have maintained an action for the amount due for the coal in the English courts. *Robinson & Co.* v. *Continental Ins. Co. of Mannheim, supra; Ingle* v. *Mannheim Ins. Co., supra; Leader* v. *Direction Der Disconto Gesellschaft,* 31 T. L. R. 83, [1915] 2 K. B. 154.

Our law is the same as the English law in this regard. *McVeigh* v. *United States*, 11 Wall. 259, 267, citing Bacon's Abr., Tit. Alien, d; Story's Equity Pleadings, § 53; *Albrecht* v. *Sussman*, 2 Vesey & Beam, 323; *Dorsey* v. *Kyle*, 30 Maryland, 512, 522; *cf.* Pollock on Contracts, 8th ed., p. 100; *Compagnie Universelle de Telegraphie* v. *United States Service Corporation, supra.*

In no case was jurisdiction declined by our courts in their discretion where denial of justice or hardship upon the libelant would result. They have consistently taken and held jurisdiction where no other courts were available, regardless of the pressure of business, and in some instances of the protests of consuls of foreign countries whose subjects were involved in the litigation. *Chubb* v. *Hamburg-American Packet Co.*, 39 Fed. Rep. 431; *The Amalia*, 3 Fed. Rep. 652; *Boult* v. *Ship Naval Reserve*, 5 Fed. Rep. 209; *The Walter D. Wallet*, 66 Fed. Rep. 1011; *The Attualita*, 238 Fed. Rep. 909; *The Troop*, 118 Fed. Rep. 769; *The Noddleburn*, 30 Fed. Rep. 142; *The Lady Furness*, 84 Fed. Rep. 679; *Aktieselskabet K. F. K.* v. *Rederiaktiebolaget Atlantan*, 232 Fed. Rep. 403; *The City of Carlyle*, 39 Fed. Rep. 807; *The Sirius*, 47 Fed. Rep. 825; *Bolden* v. *Jensen*, 70 Fed. Rep. 505; *The Ucayali*, 164 Fed. Rep. 897; *The Ester*, 190 Fed. Rep. 216. *Goldman* v. *Furness, Withy & Co.*, 101 Fed. Rep. 467, distinguished.

There is no suspension of claims against an enemy in the home forum or an allied forum for debts due under executed contracts. *Halsey* v. *Lowenfeld*, [1916] 2 K. B. 707; *Robinson & Co.* v. *Continental Ins. Co. of Mannheim*, [1915] 1 K. B. 155. *Hiatt* v. *Brown*, 15 Wall. 177; *Janson* v. *Driefontein Consolidated Mines*, [1902] A. C. 484; and Trotter, Law of Contract During War, p. 39, refer to executory contracts only.

By the writ of certiorari the case has been removed to this court and is here to be tried *de novo*. The subject of

9.                   Argument for Respondent.

an ally seeks to recover an admitted debt from the subject of an enemy.  The suit should be sustained.  *Irvine* v. *The Hesper*, 122 U. S. 256, 266; *Reid* v. *American Express Co.*, 241 U. S. 544; *Caperton* v. *Bowyer*, 14 Wall. 216, 236; *Daimler Co.* v. *Continental Tyre & Rubber Co.*, [1916] 2 A. C. 307; the District Court's opinion in this case, and cases there cited, 224 Fed. Rep. 188, 193; *Taylor* v. *Carpenter*, 3 Story, 458; *Société Anonyme Belge* v. *Anglo-Belgian Agency*, [1915] 2 Ch. 409, 414.

*Mr. Charles S. Haight*, with whom *Mr. Clarence Bishop Smith* was on the brief, for respondent:

If the court must take jurisdiction, against its better judgment, merely because it has the power to do so, there is no discretion.  The claim that respondent admitted jurisdiction is erroneous.  The courts in each case between foreigners, in connection with contracts made and to be performed abroad, should decide whether it is proper and will promote justice to take jurisdiction.  This principle is clearly stated in *The Maggie Hammond*, 9 Wall. 435, and *The Belgenland*, 114 U. S. 355, which make it clear that "the question is one of discretion in every case."  In the case at bar a controversy *communis juris* has been modified by the war statutes of belligerent nations.  The exercise of discretion will not be disturbed on appeal, unless that discretion has been abused.  *Earnshaw* v. *United States*, 146 U. S. 60; *Sun Cheong-Kee* v. *United States*, 3 Wall. 320; *Silsby* v. *Foote*, 14 How. 218; *The Belgenland, supra; The Dos Hermanos*, 10 Wheat. 306, 310, 311.  This is so in trials *de novo*.  *The Eliza Strong*, 130 Fed. Rep. 99; *Bearse* v. *Three Hundred and Forty Pigs of Copper*, 2 Fed. Cas., p. 1192.

In refusing to take jurisdiction the court committed no breach of comity.

Irrespective of war complications, where an action is brought by a non-resident against a non-resident, in con-

nection with a contract which is made and to be performed outside of the United States, the District Court, in its discretion, ordinarily does not take jurisdiction if one party objects. *Goldman* v. *Furness, Withy & Co.*, 101 Fed. Rep. 467.

Not only are all of the reasons of convenience opposed to the trial of such cases here, but an American court is not the appropriate forum to pronounce upon questions of foreign law, especially where the parties are all foreigners. Foreign law is difficult to prove, and in cases of doubt the court should be slow to assume that the law of these countries is the same as that of the United States. *Cuba R. R. Co.* v. *Crosby*, 222 U. S. 473.

The complications of the war have strengthened and emphasized the reasons for refusing to take jurisdiction. War prevents intercourse between belligerents and suspends the payment of debts, so that belligerent nations in modern times do not consider it necessary to confiscate debts. In recent times it has been customary to confiscate only property at sea; but there can be no question about the right of a belligerent to confiscate every kind of enemy property within its reach, on land and on sea, including the debts owed by its subjects. 1 Kent, Com., 64, 65; *Brown* v. *United States*, 8 Cranch, 110, 122, 124; *Porter* v. *Freudenberg*, [1915] 1 K. B. 857, 869; *The Rapid*, 1 Gall. 295. *Baglin* v. *Cusenier Co.*, 221 U. S. 580; Hall, International Law, p. 458, distinguished.

It is clear, therefore, that the rights and liabilities of the parties in the case at bar have been vitally altered by the declaration of war. Their contracts and rights of property are suspended, and, in addition, the Austrian Government has the clear right to confiscate the credits of the libelant, by ordering the respondent to pay to the Austrian Government itself. Such a confiscation would destroy the right of the libelant to recover from the respondent.

If the courts do not recognize this suspension of obligations, confiscation of debts by belligerents will be stimulated, which is undesirable. Austrian law having forbidden any payments to English citizens, during the war, under penalty of imprisonment and fine, and England having similarly forbidden her citizens to make payments to Austrians, it can hardly be supposed that this court would undertake to order a foreign corporation, in such a case as this, to commit a crime against the laws of its own country.

To have taken jurisdiction would have amounted to an abuse of discretion. The only case cited for the proposition that the United States should entertain a suit between citizens of belligerent nations, during war, is *Compagnie Universelle de Telegraphie* v. *United States Service Corporation*, 84 N. J. Eq. 604, a case distinguishable, among other reasons, as involving a contract for the sale of land in the United States, to be performed here.

This court does not give extraterritorial force to a German or Austrian law when it recognizes the fact that the defendant is absolutely prohibited, by the law of his own country, from paying the debt sued upon, and is subject to heavy penalties if he does so. The power of a government to prohibit its own citizens from doing any treasonable act beyond its own boundaries is well illustrated by the cases where the courts of one State have restrained citizens of that State from bringing suit in another State or in a foreign country. *Cole* v. *Cunningham*, 133 U. S. 107; *Riverdale Mills* v. *Manufacturing Co.*, 198 U. · S. 188; *French* v. *Hay*, 22 Wall. 250, 252; *Dehon* v. *Foster*, 4 Allen, 545, 550; *Matter of Belfast Shipowners Co.*, [1894] 1 L. R., Ir. 321; *Lord Portarlington* v. *Soulby*, 3 M. & K. 104, 108; *Canada Southern R. R. Co.* v. *Gebhard*, 109 U. S. 527.

As for there being a trial *de novo* here, *Irvine* v. *The Hesper,* 122 U. S. 256, 266, and *Reid* v. *American Express Co.,*

241 U. S. 544, both hold that an appeal to the Circuit Court of Appeals is such a trial, but neither so holds of a review of that court's decision on certiorari. The trend of legislation is to have cases disposed of in the Circuit Court of Appeals as far as possible. But, were jurisdiction discretionary, it should be declined, because of the foreign character of the parties and the contract, and the inaccessibility of witnesses,—reasons accentuated by the war, and to avoid which the parties made a stipulation whose construction is now in dispute.

That one is not obliged to perform a contract made before the war, when its performance has become illegal, see *The Teutonia*, L. R., 3 A. & E. 394; *s. c.* L. R., 4 P. C. 171, 181, 187; *The Rapid*, 1 Gall. 295. The important point to note is that the relations which exist between individual enemies during war are treated by a general rule, and individual instances are not considered to determine whether some person in this country, or the country as a whole, will be benefited thereby.

All debts are suspended during war, and no interest then accrues because the obligation is wholly suspended. See *Hiatt* v. *Brown*, 15 Wall. 177, (which is not distinguishable as involving an executory contract, since the money was due during the war); *DuBellaix* v. *Lord Waterpark*, 24 Rev. Rep. 628, 630, *s. c.* 1 Dowl. & Ry. 16–20; *Rederei Actien Gesellschaft Oceana* v. *Clutha Shipping Co.*, 226 Fed. Rep. 339, 342.

The fact that an express permission was given in England to enable creditors to sue under the policy laid down in Great Britain for this war, is evidence of the general rule that during war contracts are suspended. See *Robinson & Co.* v. *Continental Ins. Co. of Mannheim*, [1915] 1 K. B. 155.

The *McVeigh Case*, 11 Wall. 259, and the authorities cited in it do not in any way affect the question whether contractual obligations are suspended during war.

Authorities cited by libelant, and in the District Judge's opinion, to show that there is no suspension of claims against recovery in the home forum or an allied forum, do not support the assertion; some of them sustain the contention of the respondent. See *Hangar* v. *Abbott*, 6 Wall. 532, 539, *et seq.; Janson* v. *Driefontein Consolidated Mines*, [1902] A. C. 484, 499; *Caperton* v. *Bowyer*, 14 Wall. 216, 236; *Robinson & Co.* v. *Continental Ins. Co. of Mannheim, supra.*

Libelant cannot recover since the drafts were not surrendered. *The Emily Souder*, 17 Wall. 666; *Ramsay* v. *Allegre*, 12 Wheat. 611, 613.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

On August 4, 1914, Great Britain declared war against Germany, and on August 12, 1914, against Austria-Hungary. Prior to August 4, Watts, Watts & Co., Limited, a British corporation, had supplied to Unione Austriaca di Navigazione, an Austro-Hungarian corporation, bunker coal at Algiers, a dependency of the French Republic. Drafts on London given therefor having been protested for non-payment, the seller brought, on August 24, 1914, a libel *in personam* against the purchaser in the District Court of the United States for the Eastern District of New York. Jurisdiction was obtained by attaching one of the steamers to which the coal had been furnished. The attachment was discharged by giving a bond which is now in force. The respondent appeared and filed an answer which admitted that the case was within the admiralty jurisdiction of the court; and it was submitted for decision upon a stipulation as to facts and proof of foreign law.

The respondent contended that the District Court, as a court of a neutral nation, should not exercise its juris-

dictional power between alien belligerents to require the transfer, by process of judgment and execution, of funds by one alien belligerent to another; an act which it alleged was prohibited alike by the municipal law of both belligerents. The libelant replied that performance of the contract by respondent, that is, the payment of a debt due, was legal by the law of the place of performance, whether that place be taken to be Algiers or London; that it was immaterial whether it was legal by the Austro-Hungarian law, since Austria-Hungary was not the place of performance; and that the enforcement of legal rights here would not infringe the attitude of impartiality which underlies neutrality. The District Court held that it had jurisdiction of the controversy, and that it was within its discretion to determine whether it should exercise the jurisdiction, since both parties were aliens and the cause of action arose and was to be performed abroad. It then dismissed the libel without prejudice, saying: "From the standpoint of this neutral jurisdiction the controlling consideration is that the law of both belligerent countries [Great Britain and Austria-Hungary] forbids a payment by one belligerent subject to his enemy during the continuance of war. This court, in the exercise of jurisdiction founded on comity, may not ignore that state of war and disregard the consequences resulting from it." 224 Fed. Rep. 188, 194.

The dismissal by the District Court was entered on May 27, 1915. On December 14, 1915, the decree was affirmed by the Circuit Court of Appeals, on the ground that it was within the discretion of the trial court to determine whether to take or to decline jurisdiction, *The Belgenland*, 114 U. S. 355; and that the exercise of this discretion should not be interfered with, since no abuse was shown. 229 Fed. Rep. 136. On June 12, 1916, an application for leave to file a petition for writ of mandamus to compel the Court of Appeals to review the

exercise of discretion by the District Court was denied (241 U. S. 655), and a writ of certiorari was granted by this court.  241 U. S. 677.  The certiorari and return were filed July 21, 1916.  On December 7, 1917, the President issued a proclamation declaring that a state of war exists between the United States and Austria-Hungary.  The case was argued here on April 17, 1918.

This court, in the exercise of its appellate jurisdiction, has power not only to correct error in the judgment entered below, but to make such disposition of the case as justice may at this time require. *Butler* v. *Eaton*, 141 U. S. 240; *Gulf, Colorado & Santa Fe Ry. Co.* v. *Dennis*, 224 U. S. 503, 506.  And in determining what justice now requires the court must consider the changes in fact and in law which have supervened since the decree was entered below.  *United States* v. *Hamburg-Amerikanische Packetfahrt-Actien Gesellschaft*, 239 U. S. 466, 475, 478; *Berry* v. *Davis*, 242 U. S. 468; *Crozier* v. *Krupp*, 224 U. S. 290, 302; *Jones* v. *Montague*, 194 U. S. 147; *Dinsmore* v. *Southern Express Co.*, 183 U. S. 115, 120; *Mills* v. *Green*, 159 U. S. 651; *The Schooner Rachel* v. *United States*, 6 Cranch, 329; *United States* v. *The Schooner Peggy*, 1 Cranch, 103, 109–110.  In the case at bar the rule is the more insistent, because, in admiralty, cases are tried *de novo* on appeal.  *Yeaton* v. *United States*, 5 Cranch, 281; *Irvine* v. *The Hesper*, 122 U. S. 256, 266; *Reid* v. *American Express Co.*, 241 U. S. 544.

Since the certiorari was granted, the relation of the parties to the court has changed radically.  Then, as earlier, the proceeding was one between alien belligerents in a court of a neutral nation.  Now, it is a suit by one belligerent in a court of a co-belligerent against a common enemy.  A suit may be brought in our courts against an alien enemy.  *McVeigh* v. *United States*, 11 Wall. 259, 267.  See also *Dorsey* v. *Kyle*, 30 Maryland, 512.  If the libel had been filed under existing circumstances, security for

the claim being obtained by attachment, probably no American court would, in the exercise of discretion, dismiss it and thus deprive the libelant not only of its security, but perhaps of all possibility of ever obtaining satisfaction. Under existing circumstances, dismissal of the libel is not consistent with the demands of justice.

The respondent, although an alien enemy, is, of course, entitled to defend before a judgment should be entered. *McVeigh* v. *United States, supra.* See also *Windsor* v. *McVeigh,* 93 U. S. 274, 280; *Hovey* v. *Elliott,* 167 U. S. 409. It is now represented by counsel. But intercourse is prohibited by law between subjects of Austria-Hungary' outside the United States and persons in the United States. Trading with the Enemy Act of October 6, 1917, § 3 (c), c. 106, 40 Stat. 411. And we take notice of the fact that free intercourse between residents of the two countries has been also physically impossible. It is true that, more than three years ago, a stipulation as to the facts and the proof of foreign law was entered into by the then counsel for respondent, who has died since. But reasons may conceivably exist why that stipulation ought to be discharged or modified, or why it should be supplemented by evidence. We cannot say that, for the proper conduct of the defense, consultation between client and counsel and intercourse between their respective countries may not be essential even at this stage. The war precludes this.

Under these circumstances, we are of opinion that the decree dismissing the libel should be set aside and the case remanded to the District Court for further proceedings, but that no action should be taken there (except such, if any, as may be required to preserve the security and the rights of the parties in *statu quo*) until, by reason of the restoration of peace between the United States and Austria-Hungary, or otherwise, it may become

possible for the respondent to present its defense adequately.   Compare *The Kaiser Wilhelm II*, 246 . Fed. Rep.. 786.   *Robinson & Co.* v. *Continental Insurance Company of Mannheim*, [1915] 1 K. B. 155, 161–162.

*Reversed.*