## SITNEK et al. v. FUND DEPOSITED WITH TREASURER OF UNITED STATES.

### No. 2577.

District Court, D. Maryland.

Feb. 27, 1943.

George W. P. Whip, of Baltimore, Md., for libellants.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., and Harold B. Finn, Sp. Asst. to Atty. Gen., for respondent.

COLEMAN, District Judge.

This is a libel suit brought to recover the sum of $4,654.26, the value of bunker coal furnished the Finnish steamship Aagot on November 30, 1941, at Baltimore, and interest.

The material facts which are uncontradicted in the present case are substantially as follows: On or about October 28, 1941, the Aagot was chartered by her Finnish owner to the RAF Ferry Command for a voyage from Hampton Roads, Virginia, or Baltimore, to one of several specified ports in Newfoundland, at charterer's option. Tankers Corporation of New York City was the charterer's agent, and it was through this company that the coal was ordered for the Aagot from the libellants. On or about December 27, 1941, while the Aagot was lying in the port of Baltimore, the United States Maritime Commission, pursuant to the provisions of the Act of June 6, 1941, Chap. 174, secs. 1–5, 55 Stat. 242–245, extended by Resolution of June 16, 1942, Chap. 416, 56 Stat. 370, 46 U.S. C.A. note preceding section 1101, requisitioned this vessel, with all her stores, supplies and fuel, and on September 5, 1942, also pursuant to the provisions of that statute, the United States Maritime Commission deposited with the Treasurer of the United States a fund in the amount of $20,000 on account of just compensation for the taking of the vessel, her stores, etc.

On September 23, 1942, the present libel was filed.

It appears from the uncontradicted evidence that all known parties having any possible interest in the vessel or the fund have either been served, or that the prescribed procedure has been adopted in an effort to serve them. The owner of the vessel has admitted the correctness of the claim as presented, and there would appear to be no question about the validity of it as a prior lien against the vessel. See The Maritime Lien Act of 1920, 46 U.S.C. A. §§ 971–974. The charter-party provided that "bunkers at loading point are to be supplied by charterers", and there was no prohibition against liens upon the vessel.

The Act of June 6, 1941, which is the basis of the present suit, provides as follows, in so far as pertinent to the present case, after empowering the President, through such agency or officer as he shall designate, to charter, purchase or requisition foreign merchant vessels necessary to the national defense: "That just compensation shall be determined and made to the owner or owners of any such vessel in accordance with the applicable provisions of section 902 of the Merchant Marine Act, 1936, as amended * * *: Provided further, That such compensation hereunder shall be deposited with the Treasurer of the United States, and the fund so deposited shall be available for the payment of such compensation, and shall be subject to be applied to the payment of the amount of any valid claim by way of mortgage or maritime lien or attachment lien upon such vessel, or of any stipulation therefor in a court of the United States, or of any State, subsisting at the time of such requisition or taking of title or possession; the holder of any such claim may commence within six months after such deposit with the Treasurer and maintain in the United States District Court from whose custody such vessel has been or may be taken or in whose territorial jurisdiction the vessel was lying at the time of requisitioning or taking of title or possession, a suit in admiralty according to the principles of libels in rem against the fund, which shall proceed and be heard and determined according to the principles of law and to the rules of practice obtaining in like cases between private parties; and such suit shall be commenced in the manner provided by section 2 of the Suits in Admiralty Act * * * and service of process shall be

made in the manner therein provided by service upon the United States attorney and by mailing by registered mail to the Attorney General and the United States Maritime Commission and due notice shall under order of the court be given to all interested persons, and any decree shall be subject to appeal and revision as now provided in other cases of admiralty and maritime jurisdiction; * * *."

The present claim has been seasonably brought within the six months' limitation of the statute, and the character and amount of the claim has been established by uncontradicted credible evidence. However, the Government has answered, alleging that it is entitled to retain the fund, intact, until "just compensation shall be determined and made to the owner or owners" of the vessel in strict conformity with the wording of the statute. That is to say, Government counsel has raised the point, —although has not strenuously asserted it at the hearing,—that no distribution should be made from the fund, until it is determined what the owners of the vessel are entitled to by way of just compensation, and also what may be the extent of any other valid claims against the fund.

■ We are not favorably impressed with this suggestion. If adopted, it might "freeze" the fund indefinitely to the prejudice of the present claimant, the exact amount, validity and priority of whose claim are definitely determined and admitted. No question of apportioning the fund arises. Each case must be dealt with upon its own separate facts. The statute, in addition to making the fund available for the payment of just compensation to the owners of the vessel, expressly makes it "subject to be applied to the payment of the amount of any valid claim by way of mortgage or maritime lien or attachment lien" upon the vessel. Accordingly, the principal amount of the claim, i.e., $4,654.-26, must be allowed.

There remains, then, only the question of whether interest and costs, or either, should be allowed against the fund. It is contended on behalf of the Government that it would not only be an unfortunate precedent if such were allowed, but that, —and again the Government advances a very literal interpretation of the language of the Act of June 6, 1941,—there being no provision in the Act for allowance of either interest or costs, we should construe the statute as in effect forbidding it. We,

however, take the opposite view. There are two constructions of the Act of June 6, 1941, as respects interest, which may be taken: First, that Section 2 of the Suits in Admiralty Act, 46 U.S.C.A. § 742, referred to in that part of the Act of June 6, 1941, which we already have quoted, is not controlling with respect to interest and costs; but that, by virtue of the earlier part of the Act of June 6, 1941 (also in our quotation), interest and costs are to be treated as in any ordinary admiralty suit, regardless of the statute, in which event interest and costs could be allowed in favor of the winning party at the legal rate; see Robinson on Admiralty, p. 850 and cases cited; and, second, that we must impliedly read into the Act of June 6, 1941, Section 3 of the Suits in Admiralty Act, 46 U.S.C.A. § 743, which does allow costs, and also interest at the rate of 4 per cent, "as ordered by the court", i.e. in the discretion of the court.

■ While either one of these interpretations would seem to be reasonable and permissible the latter one appears to be perhaps the more equitable one to adopt. Therefore we will allow libellant costs and also interest at the rate of four per cent from November 30, 1941, the date of delivery of the coal to the vessel, until paid.

■ We understand this precise question under the Act of June 6, 1941 has not heretofore been adjudicated. Also we are aware of the point, made on behalf of the Government, that, if this principle of allowing any interest and costs is to be given general application, cases may arise wherein large interest items may accrue and eat up the fund, thus causing additional hardships to vessel owners who, as well as lien claimants, are often, because of the War, subjected to heavy losses. Also, we take note of the fact that allowance of interest is expressly prohibited in suits under the Public Vessels Act of March 3, 1925, 46 U.S.C.A. § 782, unless covered by express contract. However, we must deal with each case as it arises, on its own particular facts. This decision is not to be taken as a standard or rule which this Court would necessarily apply in all cases. The allowance of interest or costs remains a discretionary matter. Neither should be allowed as respects a particular claimant in any case where it would be unreasonable or inappropriate to do so.

An order will be signed in accordance with this opinion.