## UNITED STATES v. GRAIN IMPORTERS (EIRE), Limited, et al.

### No. 3992.

Circuit Court of Appeals, First Circuit.

Aug. 25, 1944.

J. Frank Staley, of Washington, D. C., Francis M. Shea, Asst. Atty. Gen., and Arnold W. Knauth, Sp.Asst. to Atty. Gen. (Edmund J. Brandon, U. S. Atty., and George F. Garrity and Gerald J. McCarthy, Asst. U. S. Attys., all of Boston, Mass., of counsel), for appellant.

George deF. Lord, of New York City (Lord, Day & Lord, of New York City, Charles F. Dutch, and Putnam, Bell, Dutch & Santry, all of Boston, Mass., and Helen H. Robinson, of New York City, of counsel), for Grain Importers (Eire), Limited, appellee.

Albert T. Gould, of Boston, Mass. (Bingham, Dana & Gould, of Boston, Mass., and Wharton Poor, and Haight, Griffin, Deming & Gardner, and James McKown, Jr., all of New York City, of counsel), for Dampskibsselskabet af 1912.

Fitz-Henry Smith, Jr., of Boston, Mass., for Sivewright, Bacon & Co., and Lambert Brothers, Limited, appellees.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal by the United States from a final decree of the court below ordering present payment to Grain Importers (Eire), Limited, appellee, of $57,500 out of a fund of $200,000 deposited with the Treasurer of the United States as compensation for the Danish motor vessel Rita Maersk.

In brief the facts are as follows: On or about April 1, 1940, the Rita Maersk, owned by Dampskibsselskabet af 1912 Aktieselskabet, a Danish corporation, sailed from Philadelphia bound for Waterford, Eire, with a cargo of corn consigned to and owned by the appellee, Grain Importers (Eire), Limited, a corporation organized under the laws of the Irish Free State. On April 9, while on the high seas proceeding with the voyage the Master of the Rita Maersk was apprised by radio of the occupation of Denmark by armed German forces and fearing for the safety of his ship, her company and cargo, he altered course for Boston where he arrived safely on April 16. On June 13, 1940, Grain Importers (Eire), Limited, appellee herein, filed a libel in rem against the ship for breach of contract of carriage. Process was issued pursuant to this libel and the United States Marshal took possession of the vessel. In this cause one Arnold Maersk McKinney Moller, who described himself as "of Copenhagen, Denmark, temporarily residing in New York, N. Y.," intervened as agent of the Danish corporate owner and claimed the ship on its behalf reciting "that at the time of the filing of the libel herein said Dampskibsselsk af 1912 A/S. was and still is the sole owner of said vessel and that no other person, firm or corporation is the owner thereof." He subsequently filed an answer for the owner.

This was the state of affairs when Congress on June 6, 1941, passed the Idle Foreign Merchant Vessels Act, so called, 55 Stat. 242, the material parts of which, with the matter added by the amendment of March 24, 1943, 57 Stat. 48, underscored, is copied in the margin.[1] 50 U.S.C.A.Appendix, § 1271. Pursuant to this Act the United States took title to and possession of the Rita Maersk on June 16, 1941, and later, on January 31, 1942, deposited $200,-000 with its Treasurer on account of just compensation therefor. Notice of the foregoing was published in the Federal Register on April 15, 1942.

On March 20, 1942, the United States Attorney at the request of the Attorney General asked all proctors in the cause to file proofs of their retainer with the court. In compliance on July 13, 1942, the proctors appearing for the owner of the Rita Maersk filed the affidavit copied in the margin,[2] which the United States Attorney

---

[1] "Sec. 1. The President is authorized * * *, through such agency or officer as he shall designate, to purchase, requisition, * * * or take over the title to, or the possession of, * * * any foreign merchant vessel which is lying idle in waters within the jurisdiction of the United States, * * *:

"*Provided*, That just compensation shall be determined and made to the owner or owners of any such vessel in accordance with the applicable provisions of section 902 of the Merchant Marine Act, 1936, as amended:

"*Provided further*, That such compensation hereunder, *or advances on account thereof*, shall be deposited with the Treasurer of the United States, and the fund so deposited shall be available for the payment of such compensation, and shall be subject to be applied to the payment of the amount of any valid claim by way of mortgage or maritime lien or attachment lien upon such vessel, or of any stipulation therefor in a court of the United States, or of any State, subsisting at the time of such requisition or taking of title or possession; the holder of any such claim may commence *prior to June 30, 1943*, or within six months after *the first* such deposit with the Treasurer *and publication of notice thereof in the Federal Register, whichever date is later*, and maintain in the United States district court from whose custody such vessel has been or may be taken or in whose territorial jurisdiction the vessel was lying at the time of requisition or taking of title or possession, a suit in admiralty according to the principles of libels in rem against the fund, which shall proceed and be heard and determined according to the principles of law and to the rules of practice obtaining in like cases between private parties, *and any decree in said suit shall be paid out of the first and all subsequent deposits of compensation;* and such suit shall be commenced in the manner provided by section 2 of the Suits in Admiralty Act and service of process shall be made in the manner therein provided by service upon the United States attorney and by mailing by registered mail to the Attorney General and the United States Maritime Commission and due notice shall under order of the court be given to all interested persons, and any decree shall be subject to appeal and revision as now provided in other cases of admiralty and maritime jurisdiction."

[2] "Arnold Maersk McKinney Moller, being duly sworn, deposes and says:

"I am the representative in the United States of Dampskibselskabet af 1912

acknowledged to be "sufficient compliance" with his request.

Then on April 14, 1942, Grain Importers (Eire), Limited, pursuant to the Act, filed the instant libel against the fund. It is based upon the same claim as the libel previously filed against the vessel. Due notice under order of the District Court was given to all interested persons as required by the Act and the United States, the owner, and two other claimants, each with small claims, appeared and answered. On the eve of trial proctors for the libelant below, an appellee here, and proctors for the former owner, the Danish corporation, entered into a stipulation settling the libelant's claim for $57,500 without interest or costs and providing that a decree might be entered against the fund on deposit in the above amount. Subsequently, on July 21, and July 29, 1943, affidavits of Mr. Moller were filed. Both recited that the affiant was the representative in the United States of the corporate owner of the vessel; that he was an officer of that corporation, to wit, "procurist", and also a director of it; that he was familiar with its affairs; and that the corporation had purchased the Rita Maersk from her builders in 1939, and owned it until requisitioned by the United States on June 16, 1941. The earlier affidavit concluded with the statement,

"I have been informed that Grain Importers (Eire) Ltd. has agreed to settle its claim against the Rita Maersk on payment out of the fund of $57,500, without interest and without costs. I have approved that settlement, being duly authorized thereto;"
the later with the statement,

"The said s/s Rita Maersk was not mortgaged, and there was no valid claim by way of mortgage subsisting at the time of her requisition by the United States on or about June 16, 1941."

Upon the filing of these affidavits the libelant-appellee moved for a final decree based upon the stipulation of settlement. Proctors for the former owner and for the two minor claimants consented, but the proctor for the United States did not.

After hearing, the court below, rejecting the arguments offered on behalf of the United States, entered a decree ordering payment to the libelant from the fund in accordance with the stipulation but subject to license under the Trading With the Enemy Act, as amended, 50 U.S.C.A.Appendix, § 1 et seq., and Executive Order 8389, as amended, 12 U.S.C.A. § 95 note, and applicable rules and regulations. Thereupon the United States, whose representative describes it "as stakeholder or trustee of the Fund," took this appeal to us.

We pass the difficult and novel question of the right of the United States to appeal in this case because on reason and authority we think the decree of the court below should clearly be affirmed.

The fundamental question presented is whether the libelant's claim should be paid out of the fund now or not until after hostilities have ceased and free communication with Denmark and other enemy occupied countries is again possible. This, in the view most favorable to the government, is a question addressed to the sound discretion of the court below. For the purpose of this decision we shall so treat it, although counsel for the appellee argues with some force that present payment is mandatory under the wording of the Act.

The proctor for the United States takes the position that the court below abused its discretion in ordering present payment out of the fund to the libelant, and he asks us to reverse and remand with direction to stay any distribution of the fund or any adjudication with respect to rights in it until it can be definitely ascertained, first, whether the former owner is still represented by the proctors who purport to appear for it in this litigation, and, second, whether anyone in Denmark, or any other occupied country,

Aktieselskab, a Danish corporation, which has appeared in the above entitled cause. As an officer and director of that corporation, as well as under written power of attorney, I am authorized to act on behalf of said corporation and to carry on litigation on its behalf.

"This is to certify that I have retained on behalf of said corporation, the firms of Haight, Griffin, Deming & Gardner, attorneys-at-law and proctors-in-admiralty, with an office at 80 Broad Street, New York, N. Y., and Bingham, Dana & Gould, attorneys-at-law and proctors-in-admiralty, with an office at 1 Federal Street, Boston, Massachusetts, to represent said corporation in all matters and proceedings whatsoever in the above entitled cause with full power and authority to protect the rights of said corporation therein.

"M. M. Moller

"Sworn to before me this 24th day of June, 1942.

"S. Leonard Wall,
"Notary Public."

held a ship's mortgage or other lien on the vessel at the time when it was condemned and taken.

■ His argument for delay rests upon the proposition that we ought to take judicial notice of the fact that at present free intercourse between residents of this country and residents of Denmark and the other occupied countries is physically impossible. We do so without the slightest hesitation. Watts, Watts & Co. v. Unione Austriaca, etc., 248 U.S. 9, 22, 39 S.Ct. 1, 63 L.Ed. 100, 3 A.L.R. 323.

Then he makes two points. First, admitting as a general proposition that there is a presumption that proctors are authorized to act for the clients they purport to represent and that the burden of proving the contrary rests upon the one who challenges their authority, he says that this presumption ought not to be relied upon in time of war and that no decree should be entered against the fund until there can be some "real showing" of the authority of proctors for the shipowner to enter into the stipulation for settlement upon which the decree in the case at bar is based. His second point is that even though the settlement of the libelant's claim was in fact authorized, still distribution of the fund should be postponed until other possible claimants against it who are now in enemy or enemy occupied countries have had a reasonable opportunity to appear and submit their claims. There is no evidence that there are such claimants, but it is asserted that there may be persons in the occupied countries who have claims of equal or superior rank to the libelant's; that there is at present no way to give such persons, if they exist, the notice of these proceedings or the opportunity for them to act upon it if received to which they are entitled, and in consequence, if the fund is depleted now to such an extent that it later on becomes necessary to require the marshaling of all claims against the fund, the government may eventually have to pay more than the fair value of the vessel. In our view neither point is well taken.

■ Obviously whatever is paid to lienors out of the fund deposited as compensation for a vessel condemned and taken reduces the amount to be eventually paid over to the shipowner. This makes the shipowner the real defendant in libels against the fund, which it can be even though an alien enemy (Watts, Watts & Co. v. Unione Austriaca, etc., 248 U.S. 9, 21, 39 S.Ct. 1, 63 L.Ed. 100, 3 A.L.R. 323), "and this carries with it the right to use all the means and appliances of defence." McVeigh v. United States, 78 U.S. 259, 267, 11 Wall. 259, 267, 20 L.Ed. 80. Certainly proctors are one of the "means and appliances" for defending a case, but if we adopt the government's view an alien enemy, although suable, cannot authorize proctors to appear or take any steps to protect his interests because for lack of power to communicate he cannot reiterate his proctor's authority at each stage of the proceedings.[3] To avoid this situation, if for no other reason, we think that the presumption of authority in a proctor to act for his client which arises from a regular and formal appearance should be indulged in time of war as well as in time of peace and since there is here no evidence whatever of lack of authority, it follows that the stipulation for settlement entered into by proctors for the shipowner affords an adequate basis for the decree.

■ However, we do not need to rely entirely on the presumption of authority alone. The Moller affidavit quoted in footnote 2 above, is actual evidence of the general authority of the proctors to act for the shipowner, and the Moller affidavit of July 21, 1943, is actual evidence of a ratification of the settlement they made. To be sure, the affiant may have been mistaken as to his authority to speak for the shipowner, or he may have been in error as to the scope of his powers to act for it, but nevertheless the affidavits stand unchallenged by any evidence. We do not think that they can be wholly disregarded merely because of a supposition or surmise of lack of authority to execute them.

■ We turn now to the argument that no decree should be entered, even though proctors for the shipowner were authorized to assent to it, until world conditions permit actual notice to other possible claimants having rights in the fund equal or superior to the libelant's and an opportunity for such persons, if they exist, to appear and assert their claims. It is argued that since there may be persons in the occupied countries with rights in the fund superior to the libelant's, it is untimely to distribute

[3] The outbreak of war does not necessarily terminate an agent's authority; and under the circumstances of this case no such termination is to be inferred. See Am. L. Inst. Restatement of Agency § 115.

portions of it to "claimants of such low rank as are here present" until the facts are ascertainable; that the period of limitation fixed by the Act may not effect enemy aliens; that if other claimants have not had notice in fact and an opportunity to assert their rights they may not be foreclosed by the decree herein; and that, because these questions are clouded in doubt and since no prejudice can result to the libelant from delay, the court below abused its discretion in failing to postpone the entry of its decree.

In the first place we do not agree that the libelant will not be prejudiced by postponement. We think it may safely be assumed that harm results from any delay in paying what is due particularly when interest thereon has been waived. In the second place the argument for delay is not based upon facts but upon a series of mere suppositions. There is no evidence whatever of the existence of any lienors other than those who have appeared here. On the contrary the only evidence (the uncontradicted affidavits of Moller quoted above) is that there are no such persons but that the Danish corporation is the sole owner of the vessel and that it is not mortgaged. Since these uncontradicted affidavits are not overcome by the mere suggestions of the proctor for the United States they provide ample basis for the discretionary action taken by the court below.

And we think that this action is clearly sanctioned by the Act.

When it was passed many foreign merchant vessels belonging to citizens of occupied countries were lying idle in our harbors and its obvious purpose was to permit the taking of those vessels for our immediate use, it being then impossible to negotiate with their owners or with all persons who might have claims against them. To this end Congress provided for condemnation and deposit of compensation with the Treasurer of the United States and that "the fund so deposited shall be available for the payment of such compensation, and shall be subject to be applied to the payment of the amount of any valid claim by way of mortgage or maritime lien or attachment lien upon such vessel, or of any stipulation therefor in a court of the United States." Then it went on to provide a time limit for presenting claims and procedure for enforcing them.

■■ Congress, when it passed the Act, must have realized that there might be claimants in the occupied countries to whom the time limit for presenting claims would apply and that it might be physically impossible for many such claimants, under then existing conditions, to present their claims. Nevertheless it fixed a short and absolute limit upon the time within which all claims against the fund must be presented. Its only object in doing so under the circumstances must have been to expedite distribution of the fund to those who could make timely claims against it, relegating those who could not make timely claims to their rights in personam against the owner. Thus as we read the Act it clearly permits, although in all cases maybe it does not absolutely require, prompt payment from the fund to claimants who have proved their claims according to its provisions. At least to justify postponement of a decree against the fund we think that there must be some tangible evidence of harm to some actual person, and that mere surmises of harm to unknown persons who may not even exist are not enough.

■ The case of Watts, Watts & Co. v. Unione Austriaca, etc., 248 U.S. 9, 39 S.Ct. 1, 3, 63 L.Ed. 100, 3 A.L.R. 323, upon which the government relies, does not seem to us in point. In it there was no question of the authority of proctors to appear for and to represent their client, an alien enemy. The question was whether jurisdiction of a libel brought by an alien, who later because of our entry into the First World War became a citizen of a co-belligerent, against another alien who became an alien enemy, could in discretion be declined. The Supreme Court said that it could not, but that no action should be taken with respect to such a libel "until, by reason of the restoration of peace between the United States and Austria-Hungary, or otherwise, it may become possible for the respondent to present its defense adequately." In the Watts case it appears that the proctors for the alien enemy requested postponement for the reason that they could not present an adequate defense until they could communicate with their client. In the case at bar, on the contrary, the proctors for the alien enemy libelee have consented to the entry of the decree appealed from and thus, by inference at least, profess to be able to protect their client's rights in spite of their inability to communicate with it. It seems to us that if delay should ever be granted in cases of this sort it should be at the request of proctors for the alien enemy li-

belee and not at the request of a mere stakeholder whose duty is only to safeguard the fund and to pay it out as directed by a court of competent jurisdiction. In accord see United States v. Insurance Company of North America et al., 4 Cir., 143 F. 2d 53, and also Sitnek et al. v. Fund Deposited with Treasurer of United States, D. C., 49 F.Supp. 72.

The decree of the District Court is affirmed.