ELIZABETH RIDDELL, executrix, *vs.* SOPHIE V. FUHRMAN & others.

Suffolk. March 6, 1919. — May 20, 1919.

Present: RUGG, C. J., DE COURCY, CROSBY, & PIERCE, JJ.

*Alien Enemy. Probate Court*, Jurisdiction, Motion *in limine.*

A petition was filed in February, 1916, in the Probate Court for the proof of the will of a woman who had died in this Commonwealth leaving as her next of kin a son and daughters domiciled in this Commonwealth and a daughter domiciled in Germany. All the next of kin appeared by attorneys more than a year previous to the recognition of a state of war existing between the United States of America and the Imperial German Government, and, after a hearing, a decree was entered allowing the will, from which some of the next of kin, including the daughter in Germany, appealed by their attorneys after the recognition of the state of war. While the appeal was pending in the Supreme Judicial Court a different attorney at law, representing the daughter in Germany, filed a motion *in limine* praying that the litigation as to the validity of the will should be suspended until the cessation of hostilities between the United States and the Imperial German Government. The motion was denied. *Held*, that the denial of the motion was proper, and was not contrary to the provisions of the "Act to define, regulate and punish trading with the enemy, and for other purposes," U. S. St. 1917, c. 106, nor to any provision of the Hague Convention of 1907, nor to the general principles of the common law.

The inhibition against the appearance of alien enemies in courts of this Commonwealth does not prevent them from being parties defendant or respondent.

APPEAL from a decree of the Probate Court for the county of Suffolk allowing the will of Catharine Crass, late of Boston.

A motion *in limine,* described in the opinion, was heard by *Carroll,* J., and by his order an interlocutory decree was entered denying it, from which an appeal was taken. Thereafter a final decree was entered affirming the decree of the Probate Court and remanding the case to that court for further proceedings.

*E. M. Shanley,* for the respondent Susanna Merkel.

*G. M. Heathcote,* (*H. M. Bridey* with him,) for the petitioner.

RUGG, C. J. This is a petition filed on the eleventh day of February, 1916, for the proof and allowance of the will of Catharine Crass, late of Boston, who died on the thirty-first of January, 1916. The petitioner is alleged to be a resident of Cambridge in our county of Middlesex. It is averred in the petition that Susanna Merkel, resident in Ossenheim, Germany, is a daughter who, with a son and four other daughters of the deceased, all resident within this Commonwealth, constituted her heirs at law and next of kin. It was agreed at the argument that the case had proceeded and should be considered on the footing that on the fifteenth of April, 1916, appearance was entered in the Probate Court by an attorney at law for Susanna Merkel and at least one of her sisters, and that on the first of June, 1916, another attorney at law entered his appearance in the Probate Court for Susanna Merkel and two of her sisters as respondents to the petition. A decree was entered by the Probate Court on the twenty-eighth of May, 1918, allowing the will, from which appeal was taken and entered in the Supreme Judicial Court for Suffolk County by Mr. Norton as attorney for Susanna Merkel and two of her sisters. On October 29, 1918, a motion *in limine* was filed by another attorney at law, setting out that Susanna Merkel "is a resident of Hessen, Germany, and a subject of the Imperial German Government and domiciled therein," that a state of war has existed between the United States and the "Imperial German Government" since April, 1917, "whereby the said Susanna Merkel became an alien enemy and unable to assert her rights or to be heard in the courts of this Commonwealth," and suggesting that "it is in derogation of the sovereignty and contrary to the law and comity of nations" that litigation touching the validity of the will should go forward, but that it ought to be suspended until the cessation

of hostilities. An interlocutory decree denied the motion and final decree established the will.

The record shows beyond peradventure that the Probate Court acquired complete jurisdiction of the cause and of all parties, including the non-resident heir at law, who subsequently became an enemy alien, before the time when the United States was a nation participating in the war. The sole question presented is whether as matter of law the state of war existing between the United States and Germany made imperative the continuance of the proceeding at bar for hearing until the suspension of hostilities.

It is provided by an act of Congress entitled "An Act to define, regulate and punish trading with the enemy, and for other purposes," approved on October 6, 1917, that "Nothing in this act shall be deemed to authorize the prosecution of any suit or action at law or in equity in any court within the United States by an enemy or an ally of an enemy prior to the end of the war . . . and provided further, That an enemy or ally of enemy may defend by counsel any suit in equity or action at law which may be brought against him." U. S. St. 1917, c. 106, § 7 (b). If it be assumed in favor of the respondents, but without so deciding, that a petition for the proof and allowance of a will of a deceased citizen of this Commonwealth is a "suit or action at law or in equity," *Peters* v. *Peters*, 8 Cush. 529, and that the trading with the enemy act is binding upon the courts of this Commonwealth because enacted pursuant to the war powers of the federal government, *Selective Draft Law Cases*, 245 U. S. 366, it is plain that the words of that act not only do not prohibit the prosecution of this petition to a final decision, but expressly authorize the one of the respondents who is an alien enemy to appear and defend her rights through counsel. Manifestly there is nothing in that act which supports the motion *in limine*.

The question must be decided on general principles of the common law. Every practical consideration is against the allowance of the motion. It is of public concern that proceedings for the proof of wills of deceased residents of this Commonwealth, at the petition of those domiciled here, should go forward to a conclusion as speedily as possible. The creditors of the estate, the Commonwealth as possibly entitled to inheritance taxes, as well as heirs and legatees, all are interested in having determined as soon as

may be the validity of an instrument offered for proof as the last will and testament of a deceased resident.

The authorities are clear and unanimous, so far as we are aware, to the effect that the utmost extent of the inhibition against the appearance of alien enemies in courts is that they cannot be parties plaintiff. They are thus prohibited on the grounds shortly stated that our courts will give no assistance to proceedings which, if successful, would lead to the enrichment or profit of an alien enemy and hence be an aid and comfort to his country in the prosecution of its war; and also that one confessing himself hostile to our country and in a state of war with it cannot be heard if he sues in our courts to invoke in aid of his rights the benefit and protection of the laws of our nation, which in another field he is seeking to overthrow. As was said in *Daimler Co. Ltd.* v. *Continental Tyre & Rubber Co. Ltd.* [1916] 2 A. C. 307, 344, this in common with other rules against trading with the enemy "is a belligerent's weapon of self protection." It is at bottom a principle of public policy. Even that principle has been somewhat relaxed recently in England, where for the benefit of British subjects it seemed necessary to join with them as plaintiffs an alien enemy. *Rodriguez* v. *Speyer Brothers*, [1919] A. C. 59. This principle and the grounds upon which it rests fail utterly of application when the enemy alien is a defendant and not an active petitioner in our courts. Therefore it was said in *Watts, Watts & Co. Ltd.* v. *Unione Austriaca Di Navigazione*, 248 U. S. 9, 21, "A suit may be brought in our courts against an alien enemy." That statement is rested on the authority of *McVeigh* v. *United States*, 11 Wall. 259, 267, and of *Dorsey* v. *Kyle*, 30 Md. 512, in both of which decisions the question was discussed and definitively settled. The matter was reviewed at length in a comprehensive and exhaustive judgment by Lord Chief Justice Reading, speaking for the court of appeal in *Porter* v. *Freudenberg*, [1915] 1 K. B. 857. The history of the common law on the subject there is treated fully, as well as in *Rodriguez* v. *Speyer Brothers*, [1919] A. C. 59. It would be superfluous to go over the older decisions in view of the complete analysis of them in these recent judgments. There is not a shred of authority to support the contention that in general an alien enemy cannot be a party defendant or respondent in our courts in time of war. This conclusion is in harmony with *Hutchinson* v. *Brock*,

11 Mass. 119, where an enemy alien was demandant in a writ of right and was therefore in the position of a party plaintiff.

It is plain that there is no reason for suspending proceedings for the proof of the will of a deceased resident of this Commonwealth because one of the heirs at law happens to be an alien enemy. In the case at bar the one now an enemy alien retained counsel a considerable time before the declaration of war. There is nothing on the record to indicate that her rights have not been adequately protected or that she has been denied the fullest opportunity to present evidence. No application for continuance was made on the ground of difficulty by reason of the war in securing evidence or witnesses. The implications from the nature of the proceeding are all against that idea. But it is enough to say that no such contention was raised at the hearing before the single justice. There is no room for the suggestions regarded as pertinent in *The Kaiser Wilhelm II,* 246 Fed. Rep. 786, and *Watts, Watts & Co. Ltd.* v. *Unione Austriaca Di Navigazione,* 248 U. S. 9, as reasons for continuance.

It has been argued that the Hague Convention of 1907 prohibits the prosecution of this petition until after the end of the war. In that connection reference is made to Section II, "Hostilities," Chapter I, "*Means of Injuring the Enemy, Sieges, and Bombardments,*" Article 23 *h,* wherein "it is especially forbidden . . . To declare abolished, suspended, or inadmissible in a court of law the rights and actions of the nationals of the hostile party." 36 U. S. Sts. at Large, Part II, "Treaties & Conventions," pages 2301, 2302. Treaties of the United States are the supreme law of the land. *Tellefsen* v. *Fee,* 168 Mass. 188. "International law is part of our law" and must be administered whenever involved in causes presented for determination. *The Paquete Habana,* 175 U. S. 677, 700. It has been held, after examination of its history and collocation, that this paragraph of the Hague Convention simply forbids "any declaration by the military commander of a belligerent force in the occupation of the enemy territory, which will prevent the inhabitants of that territory from using their Courts of law in order to assert or protect their civil rights." *Porter* v. *Freudenberg,* [1915] 1 K. B. 857, 878. However that may be, it is too plain for discussion that there is nothing in that paragraph which gives any color to the notion

that an enemy alien may not be held and treated as a respondent in a petition for the proof of the will of a deceased resident of this Commonwealth.

*Decree affirmed.*