FRANK JANUSIS *vs.* JOSEPH LONG.

SAME *vs.* JOSEPH ADAMSKI.

Norfolk. December 8, 1932. — November 27, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Alien. Jurisdiction. Proximate Cause. Negligence,* Toward alien. *Trespass. Way,* Public: trespasser.

There being no statute of the United States or of this Commonwealth governing the precise situation, an alien who has entered this country in violation of immigration laws and, before his deportation has been ordered, is injured by reason of being struck by an automobile negligently driven, is not barred merely by his illegal entry from obtaining redress in the courts of this Commonwealth for such injuries.

Such failure of the alien to comply with the immigration laws and his consequent unlawful presence in this country were not causes contributing to his injury, and therefore did not bar his recovery in an action of tort for such injuries.

The unlawful entry and presence of the alien in this country in the circumstances above described, while wrongs committed against the United States in its sovereign capacity, did not make him a trespasser on the highway with respect to obligations owed to him by other travellers thereon.

In an action by the alien in the circumstance above described, the jury, in answer to special questions upon two different counts in the declaration, found the defendant guilty both of negligence and also of wilful, wanton or reckless misconduct toward the plaintiff. The trial judge ordered verdicts for the defendant on both counts and reported the action for determination by this court, who, having held that negligence of the defendant entitled the plaintiff to recover, ordered judgment for the plaintiff on the count charging the defendant with negligence, and directed that the verdict for the defendant on the count charging wilful, wanton or reckless misconduct should stand, the counts being for the same cause of action and not cumulative.

TWO ACTIONS OF TORT. Writs dated April 8, 1931.

In the Superior Court, the actions were tried together before *Brown,* J. Material evidence, and special findings by the jury are described in the opinion. The judge ordered verdicts for the defendants on all counts of the declarations and reported the actions for determination by this court.

*J. J. Krohn,* for the plaintiff.

*J. T. Connolly,* for the defendants.

RUGG, C.J.   These are actions of tort to recover compensation for personal injuries alleged to have been sustained by the plaintiff, while walking on a public way in this Commonwealth, by reason of being struck by an automobile operated by the defendant Long and owned by the defendant Adamski.   The jury found that Adamski was legally responsible for the acts of Long and no question of law is open on that point.   The issues now raised are the same in both cases and they may be treated together.   Each of the declarations contained two counts, alleged to be for the same cause of action, the first basing liability on the negligence of the defendant and the second on his wanton, wilful, and reckless misconduct.   Among other defences, it was pleaded that at the time of his injuries the plaintiff was illegally within the United States and was subject to deportation, that he was a trespasser, and that the defendants violated no legal duty owed to him.   Counsel for the plaintiff in his opening stated that the plaintiff admits "that he came in 1929 to the country without complying with the immigration rules, and is in this country at the present time illegally, and at the time of this accident was in illegally, and that since this accident a hearing has been had and he is now subject to deportation."   At the close of the evidence questions were submitted to the jury, answers to which were to the effect that the plaintiff (1) was in the exercise of due care, (2) was injured in consequence of the negligence of the defendant operating the car, (3) was injured in consequence of the "wanton, wilful and reckless misconduct" of the same defendant, and (4) sustained damages in the sum of $7,500.   The parties thereupon entered into a stipulation as to the disposition to be made of the cases in accordance with the principles of law ultimately found to govern the several contentions put forward.   Verdicts were directed for the defendants on each count and. the cases reported to this court for determination.   No argument is now made touching the due care of the plaintiff, actual injury to him by the negligence of the defendants in operating the automobile, and the damages.

The first question to be decided is whether the unlawful presence of the plaintiff in this country is a complete bar to the actions.

It is the policy of the law of this Commonwealth to open her courts to actions or suits by the subjects of friendly foreign nations. Presence within the jurisdiction is not essential to the exercise of such privilege, but it is extended to a foreigner not within our borders. *Peabody* v. *Hamilton*, 106 Mass. 217, 220. Even alien enemies may in some circumstances be parties to litigation in our courts. *Parkinson* v. *Wentworth*, 11 Mass. 26. *Hutchinson* v. *Brock*, 11 Mass. 119. *Riddell* v. *Fuhrman*, 233 Mass. 69. *Schaffenius* v. *Goldberg*, [1916] 1 K. B. 284. Recognized limitations upon the rights of alien enemies to prosecute proceedings in the courts, especially as plaintiffs, rest upon the principle that aid and comfort ought not to be afforded to a country with which the nation is at war. *Riddell* v. *Fuhrman*, 233 Mass. 69, 72, and cases collected. *Porter* v. *Freudenberg*, [1915] 1 K. B. 857, 873–874. *Clarke* v. *Morey*, 10 Johns. 69, 72. Statutes designed primarily to advance the social welfare of our citizens have been phrased so broadly as to be available to aliens. In *Mulhall* v. *Fallon*, 176 Mass. 266, it was held that a British subject resident in Ireland might maintain an action in our courts as dependent next of kin to recover damages for the death of her son under the employers' liability act. G. L. (Ter. Ed.) c. 229, § 4. In *Derinza's Case*, 229 Mass. 435, benefits of the workmen's compensation act were held to be payable to dependent relatives who were nonresident aliens domiciled in a friendly foreign nation. There is thus no inherent incapacity in our courts to take jurisdiction over a cause of action arising here between parties actually within our territory. *Lonergan* v. *American Railway Express Co.* 250 Mass. 30, 40. Statutes of foreign nations and of sister States founded upon a wrongful act committed in such foreign jurisdiction and causing death will be enforced by our courts in favor of, or for the benefit of, aliens as well as of our own citizens, unless for some special reason found

to be contrary to the policy of our law. *Jackson* v. *Anthony*, 282 Mass. 540, 545–547, and cases there reviewed. *Fitzpatrick* v. *International Railway*, 252 N. Y. 127.

In essence the question is whether our courts ought to refuse to exercise a jurisdiction otherwise proper and complete because of the fact that the person who invokes that jurisdiction has come into the United States in violation of its immigration laws. There is no statute of the United States or of this Commonwealth governing this precise situation. The Congress has complete control over the admission and exclusion of aliens and can make any rules as to their rights and conduct within the country deemed wise or necessary to effectuate a general governmental policy. If it should determine to deny to aliens illegally present within the country the right to sue in State courts, the latter would be bound to carry out that mandate. *Fong Yue Ting* v. *United States*, 149 U. S. 698, 706. *Zakonaite* v. *Wolf*, 226 U. S. 272, 275, and cases cited. In the absence of an act of Congress on the subject, it may also be within the legislative competency of the General Court to classify those aliens who may resort to our courts for relief so as to exclude the class to which the plaintiff belongs. *Commonwealth* v. *Libbey*, 216 Mass. 356, 358–359. *Bogni* v. *Perotti*, 224 Mass. 152, 157. *Commonwealth* v. *Higgins*, 277 Mass. 191, 195. *Truax* v. *Corrigan*, 257 U. S. 312, 338. No statute of either government has declared any policy of this nature.

The defendants urge that our courts have no power to entertain these actions, or that the plaintiff is barred from access to our courts, upon the authority of several decisions. The contention is that, since the plaintiff was illegally in the country, he was not "in the jurisdiction" or "legally existent" or "civilly alive." That contention is founded on cases where it has been said in substance that it is possible for one to be physically within the boundaries but not within the limits of the jurisdiction of the United States. Those decisions arose respecting the initial right of the alien to enter the United States, and included cases where for convenience an asylum on land had been per-

mitted pending the determination of the right of the alien to come into the country. As was said in *United States* v. *Ju Toy*, 198 U. S. 253, 263, "The petitioner, although physically within our boundaries, is to be regarded as if he had been stopped at the limit of our jurisdiction and kept there while his right to enter was under debate." *Kaplan* v. *Tod*, 267 U. S. 228. *Nishimura Ekiu* v. *United States*, 142 U. S. 651. *United States* v. *Tod*, 297 Fed. Rep. 385. Proceedings to test that right are not subject to all the constitutional guaranties which may be invoked by citizens. *United States* v. *Ju Toy*, 198 U. S. 253. It has been said also, in a deportation case, that "No domicile in the United States can be established by an alien whose original entry was unlawful." *Hurst* v. *Nagle*, 30 Fed. Rep. (2d) 346, 347. *Domenici* v. *Johnson*, 10 Fed. Rep. (2d) 433. We are of opinion that those judicial expressions were confined to the facts before the court and cannot be extended to cases where, without physical let or hindrance, the alien, although in violation of the law, has gained physical admission to the country and is actually living here.

Another aspect of the defendants' contention is that no cause of action arose in favor of the plaintiff because, since he was in this country in violation of the immigration laws, he was in theory of law not here at all, so that no tort committed against him would give rise to a cause of action. In substance and effect this contention is that the illegal presence of the plaintiff has put him beyond the protection of the law and makes him an outlaw without any standing whatever. The term "outlaw" was used in *Dudley* v. *Northampton Street Railway*, 202 Mass. 443, 447, and in many decisions following it to describe the status, as created by our statutes, of an unregistered automobile on public ways. It has been used not in its narrow or technical sense, but rather as a graphic expression of the illegal position of such an automobile on our public ways as established by statute. *Potter* v. *Gilmore*, 282 Mass. 49, 51, 52. The ancient doctrine as to outlawry is not applicable to the case at bar. "A person does not become an outlaw and

lose all rights by doing an illegal act." *National Bank & Loan Co.* v. *Petrie,* 189 U. S. 423, 425. Even an unlicensed dog is not an outlaw and is entitled to some rights notwithstanding the provisions of G. L. (Ter. Ed.) c. 140, § 151, to the effect that "any person" may kill or cause to be killed a dog not "licensed and collared" as required by law "whenever or wherever found." The unwarranted killing of such unlicensed dog by another dog without the knowledge, direction or presence of its owner renders the latter liable to damages in an action by the owner of the unlicensed dog. *Baer* v. *Tyler,* 261 Mass. 138, 141.

Aliens unlawfully within the country are subject to the criminal law and may be prosecuted and punished for its infraction according to the law of the land. To that extent they owe allegiance to the laws of the government. *United States* v. *Wong Kim Ark,* 169 U. S. 649, 685, 686, 693, 694. *United States* v. *Williams,* 194 U. S. 279, 291. It is equally plain that they are entitled to the protection against criminal violence or fraud afforded by the laws established for the security of human beings. The plaintiff clearly would be liable to suit in our courts instituted to redress any grievance sustained at his hands by a citizen of this Commonwealth or by an alien in amity and under no special disability. Even alien enemies during a state of war may be subjected to such suits. *McVeigh* v. *United States,* 11 Wall. 259. *Watts, Watts & Co. Ltd.* v. *Unione Austriaca di Navigazione,* 248 U. S. 9, 21. *Porter* v. *Freudenberg,* [1915] 1 K. B. 857, 880, 884. There is every reason why a person physically present in the Commonwealth should be held answerable in the courts for his tortious conduct.

Certain rights are secured to an alien who enters the United States in violation of immigration laws. Power of deportation by the Federal government of an alien for violation of immigration laws is limited in some instances to a period of five years after entry. Immigration Act of February 5, 1917, c. 29, § 19, 39 U. S. Sts. at Large, 889. An alien, held awaiting deportation, was allowed to go on land in charge of an attendant. He escaped, disappeared, and

was not retaken until after the expiration of five years. It was held that, although he escaped unlawfully from custody, he stood on the same footing as one who entered by stealth and remained during the five year period and could not be deported. *United States* v. *Commissioner of Immigration*, 61 Fed. Rep. (2d) 573. The validity of this or similar provisions against deportation after the lapse of a specified period has been recognized in numerous cases. *Lewis* v. *Frick*, 233 U. S. 291. *Weedin* v. *Okada*, 2 Fed. Rep. (2d) 321. *Nagle* v. *Hansen*, 17 Fed. Rep. (2d) 557. *Hurst* v. *Nagle*, 30 Fed. Rep. (2d) 346. Such rights against deportation are attenuated and subject to loss on more or less slender breaches. *Philippides* v. *Day*, 283 U. S. 48. *United States* v. *Corsi*, 287 U. S. 129. *Taguchi* v. *Carr*, 62 Fed. Rep. (2d) 307. *Takaji Mukai* v. *Burnett*, 62 Fed. Rep. (2d) 355. But until those rights, such as they are, have been forfeited, an alien under those conditions apparently may remain indefinitely in the country. It would be pushing a fiction of absence from the jurisdiction on account of illegal entrance to an unwarranted extreme, we think, to hold that this plaintiff is not within the jurisdiction of the courts although by every physical token he is present in the country and within the reach of every judicial process. Such aliens unlawfully in the country must live. They must in the nature of things make the ordinary contracts incident to existence. They are subject to civil liability to those who rightly may resort to our courts to assert obligations against them. They may make contracts, such as those for personal labor and for sale of their goods and chattels, refusal of enforcement of which in our courts might impose great hardship on them. Respecting such aliens, it is said in Bouvé's Treatise on the Laws Governing the Exclusion and Expulsion of Aliens in the United States, 426, that the fact is that they "entered this country and proceeded to reside here . . . in enjoyment of every benefit which the law of the United States confers on persons lawfully resident here, and under the same duty to carry out their correlative obligations. Their temporary allegiance to the United States was complete and gave rise

to reciprocal protection on the part of the state, unaffected by the fact that in order to enjoy and exercise the rights and duties incident thereto they had violated the immigration law."

The rule of our decisions is that violation of law is a bar to recovery in an action of tort only in instances where it is a contributing cause to the injury. If it is a mere condition and not a directly contributing cause, it is no bar to recovery by a plaintiff who proves the other elements of liability. That was established beyond question for this Commonwealth by the exhaustive and illuminating opinion of the court, with review of many authorities, by Chief Justice Knowlton in *Bourne* v. *Whitman*, 209 Mass. 155, 167, 171. The underlying reason for this class of decisions is that the law does not lend its aid to one whose violation of law is the foundation of his cause of action, but that his general character in other particulars of life and conduct, having no relation to the cause of action, is too remote to be considered and has no relation to the issues involved. It is plain, if that principle of law governs, that the failure of the plaintiff to comply with the immigration rules and his consequent unlawful presence in the United States were mere conditions and were not causes contributing to his injury.

In the light of all these principles judicially determined and established, we are of opinion that the violation of law involved in the original entrance of the plaintiff into the country does not so taint his subsequent otherwise lawful and peaceful presence as to preclude him from seeking redress in our courts for such injuries sustained by him as are shown on this record.

The second main contention of the defendants is that the unlawful presence of the plaintiff in this country constituted him a trespasser or a mere licensee on the public ways, and that this is a defence to an action for negligence. The chief reliance of the defendants in this aspect of the case is *Dudley* v. *Northampton Street Railway*, 202 Mass. 443, and cases following it. *Potter* v. *Gilmore*, 282 Mass. 49. The principle on which those cases rest is that the

terms of the statute as to registration of automobiles as a condition precedent to their use on public ways manifested a legislative purpose to put those "forbidden and dangerous machines outside the pale of travellers." *Carrington* v. *Worcester Consolidated Street Railway*, 222 Mass. 119, 120. The reasons which led to those decisions have no application to the case at bar. The immigration laws of the United States have no necessary connection with the public ways and are not designed for the protection of the travelling public. They confer no individual benefits upon persons legally here. Their violation constitutes no invasion of private rights. They were enacted pursuant to a governmental policy as to the admission of aliens. The wrongs done by the plaintiff were committed against the United States in its sovereign capacity. They did not make him a trespasser on the highways with respect to the obligations owed to him by the defendants. *Carrington* v. *Worcester Consolidated Street Railway*, 222 Mass. 119. *O'Brien* v. *Hudner*, 182 Mass. 381. *Farr* v. *Whitney*, 260 Mass. 193, 195. The defendants were therefore liable to the plaintiff for injuries sustained by him through their negligence. There was ample evidence to support the finding of negligence.

It becomes unnecessary to consider the question of wilful, wanton or reckless misconduct. The plaintiff is not entitled to judgment on both counts in his declaration. They are for the same cause of action, but are different in kind and are not cumulative. *Altman* v. *Aronson*, 231 Mass. 588, 592, 593.

The result is that, in accordance with the stipulation, the verdict for the defendant on the first count is set aside in each case and judgment is to be entered for the plaintiff for the amount of the verdict on that count. Verdict for the defendant on the second count is to stand in each case.

*So ordered.*