John C. Swinford *vs.* James H. Welch, administrator,
& others.

Suffolk.    November 5, 1943. — April 29, 1944.

Present: Field, C.J., Lummus, Qua, & Ronan, JJ.

*Kinship.    Descent and Distribution.*

A conclusion by a judge of probate, that a certain woman was one of two
first cousins and next of kin of an intestate, was held by this court to
be wrong on evidence reported without a report of material facts found,
where the great weight of the oral testimony and every official record
introduced in evidence were contrary to the conclusion, and alleged
facts which were the principal basis of the woman's claim of kinship
were inconsistent with facts which the judge must have found in es-
tablishing the kinship of the other first cousin.

Petition, filed on June 5, 1942, in the Probate Court for
the county of Suffolk, in the estate of John J. Donovan, late
of Boston, intestate, by John C. Swinford, alleging that he
was the only first cousin of Donovan living at his death, and
"that various appearances . . . [had] been entered for
alleged relatives of the said deceased, none of whom is a
first cousin, or entitled to share in the distribution of the
assets of" Donovan's estate, and praying that "the kinship
of the petitioner and . . . [certain named] alleged relatives
. . . be established, and that the . . . appearances [of
certain named attorneys] be stricken from the docket."

It appeared that Donovan died intestate on June 6, 1941,
and that on June 10, 1941, an administrator of his estate
was appointed on a petition for administration naming
John C. Swinford as his sole heir and next of kin.

Swinford's petition was heard by *Wilson*, J., and a decree
was entered that "the heirs of said John J. Donovan are
John C. Swinford . . . a first cousin and James H. Welch
as he is Administrator of the estate of the late Julia Agnes
Daley Welch, a first cousin. It is further decreed that all
appearances other than those of Daniel A. Lynch, Esq.,
attorney for John C. Swinford; James H. Flanagan and

William F. Huntley, attorneys for the administrator of the estate of Julia Agnes Daley Welch; and David J. Kelley, Esq., attorney for the administrator of the estate of John J. Donovan be and they hereby are ordered stricken from the record." Swinford appealed.

*D. A. Lynch,* for the petitioner.

*J. H. Flanagan,* (*W. F. Huntley* with him,) for the respondent Welch, administrator.

RONAN, J. This is an appeal by John C. Swinford from a decree adjudging that he and Julia Daly Welch were the only first cousins and next of kin of John J. Donovan who died intestate in Boston on June 6, 1941. Swinford appeals on the ground that Mrs. Welch was not a cousin of the intestate. Mrs. Welch died before the petition was heard, and James H. Welch, the administrator of her estate, has become a party to these proceedings.

No question is now raised but that Swinford was a first cousin of John J. Donovan, but it is important in determining the correctness of the finding that Mrs. Welch was a first cousin to ascertain the facts that the judge must have found in coming to the conclusion that Swinford was a first cousin. We have a transcript of the evidence, but the judge made no report of the material facts.

In finding that Swinford was one of the next of kin, the judge must have found that John Daly married Kate Hogan in Ireland and that Julia Daly was their daughter; that Julia Daly came to America, married Cornelius Donovan in 1853, and lived with him until his death in 1860; that three children, Joanna, Cornelius and John J. Donovan, the intestate, were born of this marriage; that after the death of John Daly his widow, Kate Hogan Daly, married Timothy Nihan and that Mary Catherine Nihan was their daughter; and that she afterwards married and was the mother of the appellant Swinford. It is now settled that the mother of the intestate and Mrs. Swinford were half sisters. There was also testimony that, besides Julia Daly Donovan, John Daly and Kate Hogan Daly had two other daughters, Ellen Daly who married a McCarthy, and Mary Daly, and two boys who died in infancy. Ellen, Julia and

Mary Daly came to America during the years from 1840 to 1850. Two children were born of the marriage of Timothy Nihan and Kate Hogan Daly Nihan, one Mrs. Swinford and the other a son, Dan Nihan, who married and had a son Timothy Nihan who came to Boston and resided in Dorchester until his death on April 5, 1941. Mrs. Swinford came to America in 1853 and resided in Boston with her half sisters until 1875, when she went to California where she lived until her death in 1925. She returned to Boston in 1904 and stayed there a year, nursing Joanna Donovan, the sister of the intestate, who had been injured in a street car accident and who died on November 12, 1904. John J. Donovan and his brother visited the Swinfords in California in 1925 and 1930. There was considerable correspondence between the Donovans and Swinfords over a long period of years. The documentary evidence, including the correspondence just mentioned and also that between the Swinfords and a grandson of Ellen Daly McCarthy and between Timothy Nihan and the Swinfords and the Donovans and the death certificates of Ellen Daly McCarthy, Julia Daly Donovan and Catherine Swinford, is of a highly persuasive character and shows that Ellen Daly McCarthy and Catherine Swinford were the aunts of John J. Donovan; that Timothy Nihan at the time of his death in the spring of 1941 was a first cousin of John J. Donovan; and that at the time of the death of the latter, on June 6, 1941, he was survived by one first cousin, the appellant Swinford.

We now consider the evidence upon which the judge found that Julia Daly Welch was also a first cousin. Mrs. Welch was born on Purchase Street, Boston, in 1867, the daughter of Michael Daly and Joanna Daly who were married in 1852. Her claim to kinship to the intestate is that his mother, Julia Daly Donovan, was a sister of her father, Michael Daly. Mrs. Welch had five brothers and five sisters. The listings of the directory supplemented by birth and death certificates of her brothers and sisters, several of whom died in infancy, showed that her parents up to the time of the death of her father in 1871 had lived at various dwellings, all in the same immediate neighborhood.

During the period of Michael Daly's married life, the street directory lists a Julia Donovan as living in close proximity to Michael Daly and lists her during 1868, 1869 and 1870 as living at 3 Spear Alley where Michael Daly was listed as living during 1868 and 1869. There was no evidence, however, that she was a member of his family or that she did not occupy a different tenement at this address. We do not know how many other Dalys and Donovans were listed as residents of this neighborhood. After the death of her father, Mrs. Welch, who was named Julia Agnes Daly in the certificate of her birth, went to New Hampshire with her brothers and sisters where she remained for four or five years. On her return to Boston she lived on Curve Street or Tyler Street, while the Donovans lived for the most part on Tyler Street until 1893 when they moved to Burney Street where Julia Daly Donovan died. There may have been times when Mrs. Welch could have visited the Donovans by going through a back yard, as the children of Mrs. Welch testified that she told them she did. Mrs. Welch married in 1900 and lived at Dover Street, then in South Boston and finally in Dorchester, where she died on October 1, 1941.

The daughter and a son of Mrs. Welch testified that their mother had told them that her father, Michael Daly, had but one sister, Julia Daly Donovan; that she was named after her; that she visited her by going through the back yard; that she stayed over night with her aunt; and that Joanna Donovan had given her a doll when she was a young child. If she ever visited the Donovans there is no question that the visits ceased before Mrs. Welch married in 1900. Mrs. Welch worked in Boston up to two or three days before her death and, although she lived in Boston, she never heard from the Donovans and thought they were dead. She did not learn of the death of Cornelius Donovan or of John J. Donovan until a genealogist, so called, visited her on August 1, 1941, and had her sign a contract by which he was to receive one third of what she obtained if she was successful in proving her relationship to Donovan. This genealogist disappeared during the hearing and the

appellant attempted to summon him as a witness. Mrs. Welch's husband was living in Boston but he did not testify and neither did her other son. Her two children who did testify never saw any of the Donovans and offered no explanation why the visits of their mother ceased more than forty years before the death of the intestate. Witnesses who testified in favor of the appellant and persons whom they mentioned in their testimony were undoubtedly second and third cousins of the intestate, but the children of Mrs. Welch testified that all of these persons were strangers to them and that their mother had never mentioned the names of any of them. None of those cousins who testified ever heard of Mrs. Welch. The intestate, especially during the last years of his life, would refer to his relatives but he never mentioned Mrs. Welch. He carried on quite an extensive correspondence with the appellant and he received some letters from his cousin Timothy Nihan, but not a word nor a line passed between him and Mrs. Welch.

There is little to the claim of Mrs. Welch outside of her alleged declaration to her two children. Her alleged statement that Julia Daly Donovan was the only sister of her father, Michael Daly, is contradicted by the death certificates of Ellen Daly McCarthy, of Catherine Swinford and of Julia Daly Donovan herself. It is contradicted by the finding of the judge that the appellant was a first cousin because that finding could not have been based upon any ground other than that Julia Daly Donovan and Catherine Swinford were the daughters of Kate Hogan Daly Nihan. Moreover, the death certificate of Michael Daly gives his father's name as John Daly and the maiden name of his mother as "Margaret ———." There was no evidence whatever that Kate Hogan was ever known as Margaret. The two children of Mrs. Welch who testified stated that their mother never told them the name of her father's mother. One of them testified that she had seen the death certificate of Michael Daly and considered it a weakness in the case, and the other testified that he did not know whether it was correct in stating the name of his grandfather's mother as Margaret, but that he did not "know anything to the con-

trary either." Counsel for the estate of Julia Daly Welch stated in open court that he did not wish to impeach that certificate. The statements contained in the death certificate were prima facie evidence of the facts recorded. G. L. (Ter. Ed.) c. 46, § 19. *Walcott* v. *Sumner,* 308 Mass. 413. *Lydon* v. *Boston Elevated Railway,* 309 Mass. 205.

If the case were to be decided on the oral evidence alone it would be difficult, in the face of a great mass of material facts disclosing the relatives of the intestate, most of which are undisputed and which strongly tend to negative the claim of Mrs. Welch, to arrive at the conclusion reached by the judge. If he believed the children of Mrs. Welch that she made the alleged statements about the relationship of her father to Julia Donovan, he was in no better position than we are to determine what credibility should be given to these statements. It is strange that the intestate so far as appears never mentioned Mrs. Welch and that those who unquestionably were his relatives never heard of her. Mrs. Welch, so far as the record goes, never mentioned or saw any of them. They were all strangers to her children. The alleged statement of Mrs. Welch that her father was a brother of Julia Daly Donovan or that she was his only sister is not supported by a single official record but in fact is contradicted by every official record pertaining to the relatives of either. Inferences from the basic facts shown by the testimony are open to revision on appeal. In our opinion an inference that Michael Daly was the son of Kate Hogan Daly is not supported on the evidence. *Newburyport Society for the Relief of Aged Women* v. *Noyes,* 287 Mass. 530, 532. *Vergnani* v. *Guidetti,* 308 Mass. 450, 456. *Veazie* v. *Staples,* 309 Mass. 123, 127. *Malone* v. *Walsh,* 315 Mass. 484. *New England Trust Co.* v. *Commissioner of Corporations & Taxation,* 315 Mass. 639. See also *Butterick Publishing Co.* v. *Fisher,* 203 Mass. 122, 132; *Yankee Network, Inc.* v. *Gibbs,* 295 Mass. 56, 59; *Plumer* v. *Luce,* 310 Mass. 789; *Hinckley* v. *Barnstable,* 311 Mass. 600, 602.

The final decree must be modified by striking out the words "and James H. Welch as he is Administrator of the estate of the late Julia Agnes Daley Welch, a first cousin,"

and also the words "James H. Flanagan and William F. Huntley, Attorneys for the Administrator of the estate of Julia Agnes Daley Welch," and by changing the word "heirs" in the first line of the decree as printed in the record and the word "are" in the second line thereof to "heir" and "is" respectively. The decree as so modified is affirmed.

*Ordered accordingly.*