GEORGE J. KNAPP, executor, *vs.* JAMES M. GRAHAM & another, administrators.

Suffolk. May 13, June 24, 1946. — June 29, 1946.

Present: FIELD, C.J., QUA, RONAN, WILKINS, & SPALDING, JJ.

*Probate Court,* Appeal, Parties, Continuance, Judicial discretion, Alien. *Death. Executor and Administrator,* Distribution, Alien enemy. *Descent and Distribution. Evidence,* Judicial notice. *Alien Property Custodian. War.*

A probate appeal signed by a certain attorney "designated, appointed and empowered by the alien property custodian to appear for and represent" a named enemy national was in the right of the enemy national and not that of the attorney personally.

One shown to have been alive less than seven years before a certain date was, in the absence of proof of his death, presumed to have been alive on that date.

Evidence that one was a cousin and next of kin of an intestate was sufficient to show that he was a person aggrieved by and entitled to appeal from a decree of the Probate Court denying his motion to continue a hearing on a petition for distribution and from a decree ordering distribution of the estate to others, although the appeals referred to the appellant as "supposed to be a cousin" of the intestate.

An exercise of discretion by a judge of probate in denying a motion for a continuance of a hearing on a petition was reviewable by this court on appeal.

The caption of a case presented to this court upon appeals by an enemy national, claiming an interest in the estate of an intestate as a next of kin and represented by an attorney duly designated by the alien property custodian, from the denial by the Probate Court of a motion made on behalf of the enemy national for a continuance of a hearing upon a petition by a next of kin other than the enemy national for distribution of the estate and from a decree for distribution to the petitioner and one other next of kin to the exclusion of the enemy national, should have been, "[The petitioner by name] vs. [the administrator of the estate as such by name]."

This court took judicial notice of the facts that in March, 1945, a state of war existed between the United States and Germany; that hostilities did not cease until May, 1945; and that at least until the cessation of hostilities there had been no time since the death of an intestate here late in December, 1941, when there was a reasonable opportunity for the proper ascertainment or presentation of an interest claimed in the intestate's estate by an enemy national resident in Germany.

With respect to the estate of an intestate who died here in December, 1941, a denial by the Probate Court in March, 1945, of a motion, by attor-

neys designated by the alien property custodian to represent an enemy
national resident in Germany, to continue a hearing on a petition for
distribution until the facts as to the enemy national's kinship to the
intestate could be ascertained was an abuse of discretion and error in
that it unfairly deprived the enemy national of his rights and dis-
regarded the powers vested in the alien property custodian under
paramount war time Federal statutes.

PETITION for distribution, filed in the Probate Court for
the county of Suffolk on August 23, 1944.

The proceedings described in the opinion were before
*Dillon, J.*

*C. J. Kalinauskas,* for Wilhelm F. Karcher, claiming as
next of kin.

*J. M. Graham,* for the petitioner and others, submitted
a brief.

WILKINS, J.    Matilda A. Fricker of Boston died in-
testate December 21, 1941.  On February 3, 1943, admin-
istrators of her estate were appointed by the Probate Court
of Suffolk County.  In a report under date of August 9,
1943, to the alien property custodian the administrators
described the persons interested in the estate in the follow-
ing language: "Emma M. Knapp, . . . Sophia E. Scholl,
. . . Jamaica Plain, Mass.  Both claim to be first cousins
of the deceased and it is claimed that Wilhelm Frederick
Karcher (address unknown) of Germany is a first cousin.
The cousins are apparently the nearest next of kin, and
dependent upon who is adjudged to be the nearest next of
kin depends their interest in the estate."  The report stated
that "the estate will simply be held until it is determined
who are the heirs at law and next of kin and . . . thereon
will depend . . . the disposition of the property of the
deceased."  On August 23, 1944, George J. Knapp, executor
of the will of Emma M. Knapp, filed a petition for dis-
tribution in the Probate Court of Suffolk County, alleging
the next of kin to be two first cousins, Emma M. Knapp,
deceased, and Sophie E. Scholl.  On March 23, 1945,
Charles J. Kalinauskas, Esquire, and Dennis E. Sullivan,
Esquire, attorneys designated "by the alien property custo-
dian to appear for and represent Wilhelm Frederick Karcher,

a citizen and national of Germany, whose last known address is Karlsruhe, Germany," filed a motion "to continue generally hearing upon said petition for distribution, and to postpone and defer the entry of any decree thereon, until such time as the facts concerning the relationship of the said Wilhelm Frederick Karcher to the decedent, now unknown, may be learned." After quoting from the report of the administrators to the alien property custodian, the motion set forth: "Action other than to preserve the status quo should not be taken in a suit against an alien enemy until, by reason of restoration of peace or otherwise, defense may be adequately presented; intercourse between residents of the enemy country and the United States being prohibited by trading with the enemy act, § 3 (c), as well as physically impossible." The motion also set forth that after receiving the report of the administrators "the alien property custodian has been unable to ascertain anything further about the said Wilhelm Frederick Karcher because of the existence of the state of war with Germany; that the State Department of the United States has been requested to, and is doing everything possible to ascertain the necessary facts; that further time is needed to ascertain such facts as are necessary to establish the existence and relationship of the said Wilhelm Frederick Karcher to the intestate; that a just adjudication of the rights and interests of heirs and next of kin cannot be made until such facts are available." On the same day the probate judge denied the motion, and heard the petition for distribution. On April 5, 1945, a decree was entered reciting that there was $45,412.87 in the hands of the administrators, "that the following persons are entitled thereto in the proportions specified as follows: Estate of Emma M. Knapp (George J. Knapp, Executor) one-half share Sophie E. Scholl one-half share . . . that said balance be distributed among them, and that an order for such distribution be issued accordingly . . .." On April 10, 1945, and April 25, 1945, respectively, appeals from the denial of the motion to continue and from the decree for distribution were filed signed by "Charles J. Kalinauskas, attorney

designated, appointed and empowered by the alien property custodian to appear for and represent Wilhelm Frederick Karcher, a citizen and national of Germany, whose last known address is Karlsruhe, Germany, and who is supposed to be a cousin of Matilda A. Fricker, late of Boston, in the County of Suffolk, deceased, and interested in the estate of said deceased." George J. Knapp, executor, and Sophie E. Scholl filed a motion in this court to dismiss the appeals on the grounds that they are the appeals of Charles J. Kalinauskas; that he is not a party in interest aggrieved; and that even if the appeals be regarded as those of Wilhelm Frederick Karcher, his relationship to the intestate is unknown, and he is not a person in interest aggrieved. The motion to dismiss the appeal from the denial of the motion to continue rests on the further ground that action on the motion was a matter within the discretion of the judge and not subject to appeal.

1. The motion to dismiss the appeals must be denied. In substance they are appeals in the right of Wilhelm Frederick Karcher and not in the right of the attorney designated by the alien property custodian to represent him. The attorney as such could not be a person aggrieved under G. L. (Ter. Ed.) c. 215, § 9. To attribute to him the expression of an intent to appeal personally in a matter in which he had no individual interest rather than to appeal on behalf of the German national he was authorized to represent would be to give too literal an effect to the language of the claims of appeals. See *McInnes* v. *Spillane*, 282 Mass. 514, 515–516. We regard as inapplicable the cases of *Boston & Albany Railroad* v. *Commonwealth*, 157 Mass. 68, 70, and *Madden* v. *Madden*, 279 Mass. 417, 424.

It is objected that Wilhelm Frederick Karcher is not known to have been alive on December 21, 1941, when Matilda A. Fricker died. No report of material facts was made by the judge. We examine the reported testimony under the applicable rule. *Lowell Bar Association* v. *Loeb*, 315 Mass. 176, 178. *New England Trust Co.* v. *Commissioner of Corporations & Taxation*, 315 Mass. 639, 643–644. *Swinford* v. *Welch*, 316 Mass. 112, 117.

The decree for distribution is predicated upon the finding, made without stating the relationship to the intestate, that the estate of Emma M. Knapp and Sophie E. Scholl were equally entitled. This was impliedly a finding that Wilhelm Frederick Karcher either was not related at all to the intestate or was related in a more remote degree than Emma M. Knapp and Sophie E. Scholl. It could not rightly be found that Wilhelm Frederick Karcher was not alive on December 21, 1941. On this record we must assume that Wilhelm Frederick Karcher is one of the two persons named Wilhelm Karcher of Karlsruhe, Germany, one a brother, and the other a nephew, of Fredericka Karcher, late of Boston, deceased, both of whom assented in writing to an administrator's account in her estate allowed February 11, 1937, in the Probate Court of Suffolk County. In view of the contention that Fredericka Karcher was a first cousin of Matilda A. Fricker and in the light of the claim set forth in the report to the alien property custodian that Wilhelm Frederick Karcher also is a first cousin of Matilda A. Fricker, we further must assume that the one with whom we are concerned is the brother, and not the nephew, of Fredericka Karcher. An examination of the original papers in the Probate Court, which are made part of the record by a stipulation of counsel approved by the probate judge, shows that the account covered the period from March 23, 1933, to December 7, 1936, and that the oath of the accountant was taken on December 7, 1936. There is no suggestion that Wilhelm Karcher was ever in this country. We infer that the assents to the account were written after December 7, 1936. As there is no proof of actual death of Wilhelm Karcher or unexplained absence on his part from his domicil or established residence for more than seven years prior to the date of death of Matilda A. Fricker, he is presumed to have been alive on that date. *Allen* v. *Mazurowski,* 317 Mass. 218, 220–221, and cases cited.

It is also contended that the relationship to the intestate of Wilhelm Frederick Karcher does not appear and that he was not a person aggrieved by the decrees. We do not regard as fatal the reference to him as "supposed to be a

cousin" rather than as a cousin in the claims of appeal. With respect to the motion to continue enough appears to satisfy the requirements laid down in *Finer* v. *Steuer,* 255 Mass. 611, 617. The contention which he is entitled to make appears on this record to be that his father was the brother of Margaret Karcher, who married Charles A. Fricker. Charles and Margaret, both now deceased, were the parents of Matilda A. Fricker and Julius Fricker. Julius, now deceased, in his will made a bequest to Fredericka, whom he described as "my cousin." See *Bishop* v. *Russell,* 241 Mass. 29. As a first cousin the relationship of Wilhelm Frederick Karcher to Matilda A. Fricker would be the same as the relationship which the judge must have found Emma M. Knapp and Sophie E. Scholl bore to Matilda A. Fricker. We are of opinion that for purposes of these appeals Wilhelm Frederick Karcher was a person aggrieved by the decrees. *Harvey* v. *Waitt,* 312 Mass. 333, 338–339. *Ballard* v. *Maguire,* 317 Mass. 130.

There is nothing in the contention that the denial of the motion to continue was a matter of discretion and for that reason not the subject of appeal. "It is true that in general whether a case when reached for trial shall be heard or continued for hearing at a later time rests in sound judicial discretion, *Morgan* v. *Steele,* 242 Mass. 217, 218, and commonly the granting of a continuance is for the presiding judge alone. *Noble* v. *Mead-Morrison Manuf. Co.* 237 Mass. 5, 16, and cases cited." *Tierney* v. *Coolidge,* 308 Mass. 255, 261. See *Odde* v. *Field,* 297 Mass. 167, 172. Such judicial discretion is, however, subject to review on appeal.

2. A motion to change the caption of the record by striking out "Alien Property Custodian, Appellant" and substituting "Wilhelm Frederick Karcher, Appellant" is denied. The proper caption of this case appears at the beginning of this opinion.

3. Further considering the denial on March 23, 1945, of the motion to continue, we take notice of the facts that on that date a state of war existed between Germany and this nation; that hostilities did not cease until May 7, 1945;

and that at least until then there had been no time since the death of Matilda A. Fricker when there had been reasonable opportunity for the proper ascertainment or presentation of this interest claimed in her estate by this German national resident in Germany.

The appearance for the appellant in the case at bar was filed in the following form: "Pursuant to the authority vested in the alien property custodian by the trading with the enemy act, as amended, and executive order 9095, as amended, and by virtue of a designation by the alien property custodian, attached hereto and made a part hereof, the undersigned appear for and on behalf of Wilhelm Frederick Karcher, a person within a designated enemy country. Dennis E. Sullivan. Charles J. Kalinauskas Office of: Alien Property Custodian." The designation read: "Pursuant to the authority vested in the alien property custodian by the trading with the enemy act as amended, and executive order 9095 as amended, you are hereby designated, appointed and empowered to appear for and represent Wilhelm Frederick Karcher, a person within a designated enemy country, in the matter of the estate of Matilda Fricker, deceased, a case now pending in the Probate Court, County of Suffolk, Commonwealth of Massachusetts, and to take such measures in connection with representing such person as may from time to time be determined by me or by my duly authorized representative. For the alien property custodian. Thomas H. Creighton, Jr. assistant to the alien property custodian."

The trading with the enemy act (40 U. S. Sts. at Large, 411–426) approved October 6, 1917, early in the first World War, provided for the appointment by the President of an alien property custodian with certain powers with respect to property in this country of enemy nationals. That act "is strictly a war measure and finds its sanction in the constitutional provision, Art. I, § 8, cl. 11, empowering Congress 'to declare war, grant letters of marque and reprisal, and make rules concerning captures on land and water.'" *Stoehr* v. *Wallace*, 255 U. S. 239, 241–242. *In re Miller*, 281 Fed. 764 (C. C. A. 2). The first war powers

act (55 U. S. Sts. at Large, 839) approved December 18, 1941, by Title III, § 301, amended § 5 (b) of the trading with the enemy act, and provided that the President in time of war "through any agency that he may designate, or otherwise, and under such rules and regulations as he may prescribe" might do certain acts with respect to any property subject to the jurisdiction of the United States of America "in which any foreign country or a national thereof has any interest"; and that such property or interest should be vested in the agency designated by the President upon such terms as he might prescribe. Pursuant thereto executive order No. 9095, 7 Fed. Reg. 1971, March 13, 1942, established the office of alien property custodian, to whom were delegated (with exceptions not here material) the power and authority conferred upon the President by § 3 (a) and § 5 (b) of the trading with the enemy act and by Title III, §§ 301, 302, of the first war powers act. Executive order No. 9095 was amended by executive order No. 9193, 7 Fed. Reg. 5205, July 9, 1942, which authorized the alien property custodian "to take such action as he deems necessary in the national interest . . . with respect to . . . any property of any nature whatsoever which is in the process of administration by any person acting under judicial supervision . . . and which is payable or deliverable to, or claimed by, a designated enemy country or national thereof" (§ 2); "to issue appropriate regulations governing the service of process or notice upon any person within any designated enemy country . . . in connection with any court or administrative action or proceeding within the United States" (§ 5); and to "take such other and further measures in connection with representing any such person in any such action or proceeding as in his judgment and discretion is or may be in the interest of the United States" (§ 5). The alien property custodian issued general orders Nos. 5, 6, and 20. These are referred to in the briefs of both parties and apparently were specifically brought to the judicial notice of the probate judge. See *Schaffer* v. *Leimberg,* 318 Mass. 396, 405; *Glover* v. *Mitchell,* 319 Mass. 1, 3–4. General order No. 5 provided for certain

reports to be made to the alien property custodian,. pursuant to which the report of the administrators under date of August 9, 1943, in the case at bar was made. General order No. 6 provided that the sending of process by registered mail to the alien property custodian should be effective service of process upon any person in any designated enemy country. General order No. 20 prohibited (unless certain acts were done by the alien property custodian) the payment, transfer, or distribution of any property for the benefit of any "designated national," who is defined as "any person in any place under the control of a designated enemy country"; and named Germany as a "designated enemy country."

In view of the foregoing we are of opinion that the probate judge could not in his discretion deny the motion to continue, but should have granted the motion. His ruling was in the circumstances a denial of a reasonable opportunity for presentation of the facts essential to showing the interest of Wilhelm Frederick Karcher in the estate of Matilda A. Fricker. It was not fair to a claimant resident in a nation with which we were at war, and gave insufficient regard to the powers conferred by Congress upon the President and by him properly delegated to the alien property custodian. In *Watts, Watts & Co. Ltd.* v. *Unione Austriaca di Navigazione,* 248 U. S. 9, 22, it was said, "The respondent, although an alien enemy, is, of course, entitled to defend before a judgment should be entered. . . . It is now represented by counsel. But intercourse is prohibited by law between subjects of Austria-Hungary outside the United States and persons in the United States. Trading with the Enemy Act of October 6, 1917, § 3 (c), c. 106, 40 Stat. 411. And we take notice of the fact that free intercourse between residents of the two countries has been also physically impossible. . . . We cannot say that, for the proper conduct of the defense, consultation between client and counsel and intercourse between their respective countries may not be essential even at this stage. The war precludes this." In *The Kaiser Wilhelm II,* 246 Fed. 786 (C. C. A. 3), it was said, at page 790, that "the fact that our country is now at war with Germany

is all the more reason why this court should most scrupulously award to this German citizen those international and equitable rights which no fair-minded people ever deny even to their enemies in times of war." Both the foregoing cases were, it is true, in admiralty, but the pertinent principles are applicable to the case at bar. The case of *Riddell* v. *Fuhrman,* 233 Mass. 69, contains nothing contrary to what we herein hold, and the ample grounds distinguishing it from the two cases last cited and from the case at bar are fully set forth in the opinion of the court (page 73). See also *City National Bank* v. *Dresdner Bank,* 255 Fed. 225 (D. C. S. D. Ala.); *Kintner* v. *Hoch-Frequenz-Maschinen Aktien-Gesellschaft fur Drahtlose Telegraphie,* 256 Fed. 849 (D. C. N. J.); *J. D. & A. B. Spreckels Co.* v. *The Takaoka Maru,* 44 Fed. Sup. 939 (D. C. S. D. N. Y.); *Murray Oil Products Co. Inc.* v. *Mitsui & Co. Ltd.* 178 Misc. (N. Y.) 82, affirmed 263 App. Div. (N. Y.) 979. It is undoubtedly true that it is of public concern that the administration of the estates of deceased residents of the Commonwealth should proceed with all reasonable expedition. See *Riddell* v. *Fuhrman,* 233 Mass. 69, 71. But this policy is subject to paramount provisions of law. "An act of Congress and administrative regulations made under its authority and consequently made substantially a part of the act . . . become part of the 'supreme law of the land,' under art. 6 of the Constitution of the United States, which provides that 'the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding.' " *Schaffer* v. *Leimberg,* 318 Mass. 396, 405, and cases cited.

The interlocutory decree denying the motion to continue is reversed. The final decree for distribution made after a hearing which should not have been held must also be reversed. The case is remanded to the Probate Court, and an order is to be entered continuing the proceeding for such time as may be reasonably necessary to allow the alien property custodian to endeavor to ascertain the whereabouts of the enemy national Karcher and his present status.

*So ordered.*